**Daisy ALOMAR, Appellant,**

v.

**William F. DWYER et al., Appellees.**

**No. 1001, Docket 71–1313.**

United States Court of Appeals,
Second Circuit.

Argued June 18, 1971.

Decided June 18, 1971.

Benjamin Phelosof, Rochester, N. Y., for appellant.

A. Vincent Buzard, Corp. Counsel of the City of Rochester (W. Alan Luce, on the brief), for appellees.

Susan S. Robfogel, Rochester, N. Y. (Harris, Beach & Wilcox), Rochester, N. Y., for appellees, Dwyer, Sweet, Zeitler and Serrano.

Before LUMBARD and KAUFMAN, Circuit Judges, and TIMBERS,* District Judge.

**PER CURIAM:**

We affirmed in open court Judge Burke's dismissal of Daisy Alomar's claim that her discharge by the City of Rochester for refusal to switch her party affiliation failed to state a claim upon which relief could be granted. Alomar claims, *inter alia*, that her discharge deprives her of a First Amendment right of free political association. See N. A. A. C. P. v. Alabama, 357 U. S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1957). Her action was brought against appellees Orr, Tennis, and Hasen, who are officials or employees of the City of Rochester ("the Rochester appellees"); and Dwyer, Sweet, Zeitler and Serrano who are local Republican party officials or members ("the Republican appellees").

The new Republican broom which swept into the Rochester City Hall in the spring of 1970 cleaned Democrat Daisy Alomar out. Alomar had been working for the city since October 1967, first as a bilingual stenographer, then as an Assistant Neighborhood Service Representative and finally as a Neighborhood Services Representative at a

---

* Chief Judge, District of Connecticut, sitting by designation.

salary of $10,426. She alleged that her discharge on May 8, 1970, resulted solely from her refusal to change from the Democratic to the Republican party and her unwillingness to accede to the unofficial requests of the Republican appellees. This allegation, undisputed by appellees, was properly treated by the district court as true on the motion for summary judgment. Judge Burke, however, agreed with appellees' view that since Alomar did not have "protected status" under the Civil Service Law of the State of New York,[1] her employment was terminable at will without notice or hearing[2] and on this ground dismissed the complaint.

Alomar's principal contention is that when this "will" is exercised solely on the basis of her refusal to change her political allegiance to the party of the incumbent administration she is denied a right of free political association. She equates this with her rights of free speech and assembly protected by the First Amendment.

The response to appellant's claim is found in Bailey v. Richardson, 86 U.S. App.D.C. 248, 182 F.2d 46, 59 (1950), aff'd, per curiam, 341 U.S. 918, 71 S.Ct. 669, 95 L.Ed. 1352 (1950), where the court observed:

It is next said that the appellant's dismissal impinged upon the rights of free speech and assembly protected by the First Amendment, since the dismissal was premised upon alleged political activity. * * * But the plain hard fact is that so far as the Constitution is concerned there is no prohibition against the dismissal of Government employees because of

their political beliefs, activities or affiliations.

The Bailey court teaches that the sole protection for government employees who have been dismissed for political reasons must be found in civil service statutes or regulations. We are not to be understood as saying, however, that in all circumstances may a provisional employee be summarily discharged. We made it clear in Birnbaum v. Trussell, 371 F.2d 672 (1966) that the discharge of a municipally employed doctor on charges of anti-Negro bias could rise to a violation of due process. We found that Dr. Birnbaum's discharge "involved [more] than merely the loss of the privilege of public employment" and noted that a "discharge for disloyalty * * * may involve such legal rights as those in reputation and in eligibility for other employment." See also, Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); McLaughlin v. Tilendis, 398 F.2d 287 (7th Cir. 1968); Johnson v. Branch, 364 F.2d 177 (4th Cir. 1966); Bomar v. Keyes, 162 F.2d 136 (2d Cir. 1947).

The spoils system has been entrenched in American history for almost two hundred years. The devastating effect that such a system can wreak upon the orderly administration of government has been ameliorated to a large extent by the introduction of the various Civil Service laws. However, it is well understood that the victors will reap the harvest of those public positions still exempt from such laws. Indeed many such positions are exempt because a new administration taking office can only

---

1. Alomar suggests that the grant of summary judgment may have been improper because, as she conclusorily alleges for the first time on this appeal, there are substantial questions of fact concerning her Civil Service Tenure. She did not invoke Civil Service protection below, however, and makes no claim now that she was other than a provisional employee.

2. Article 13, § 2 of the Constitution of the State of New York states that:

When the duration of any office is not provided by this constitution it may be declared by law, and if not so declared, such office shall be held during the pleasure of the authority making the appointment.

The City Manager (appellee Orr) is granted the authority to remove all subordinate employees of the City except as otherwise provided in the Charter. Article III, § 3-3 Charter of the City of Rochester.

484

carry out its policies by replacing certain officeholders. If and when additional exempt positions are to be subject to civil service protection is a matter for action by the appropriate municipal and state authorities and not by a federal court.

We have examined appellant's other arguments and find them without merit.

The judgment below is affirmed.