Michael L. SHAKMAN et al.,
Plaintiffs,

v.

The DEMOCRATIC ORGANIZATION
OF COOK COUNTY et al.,
Defendants.

No. 69 C 2145.

United States District Court,
N. D. Illinois, E. D.

July 28, 1972.

Richard L. Curry, Corp. Counsel, Edward V. Hanrahan, State's Atty., George J. Schaller, Marvin E. Aspen, Paul Simon, Michael J. Howlett, Alan J. Dixon, Chicago, Ill., George J. Bakalis, Springfield, Ill., Robert A. Tingler, William J. Scott, James Ronan, William F. Scannell, Michael Daley, James M. O'Shaughnessy, Charles F. Marino, Chicago, Ill., Ray W. MacDonald, Robert M. Haenisch, James H. Clark, Wayne Shimp, Wheaton, Ill., Adamowski, Newey & Riley, Edward P. Saltiel, Neil F. Hartigan, Harry R. Posner, Allen S. Lavin, J. Kucharski, Joseph S. Wright, Hackbert, Rooks, Pitts, Fullagar & Poust, William R. Quinlan, Jr., Henry L. Shakman, Chicago, Ill., John H. Foley, Jr., Rockford, Ill., Peter F. Ferracuti, Ottawa, Ill., Jack Hoogasian, State's Atty., Lake County, Waukegan, Ill., William J. Cowlin, Woodstock, Ill., Marvin D. Dunn, Aurora, Ill., James A. Rooney, Asst. State's Atty., Chicago, Ill., Winston J. Black, Krusemark & Bertani, Louis R. Bertani, State's Atty., Will County, Joliet, Ill., Robert E. Wiss, Thomas A. Foran, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

### *Motions to Strike and Dismiss*

#### I.

MAROVITZ, District Judge.

This is yet another complicated phase in the continuing litigation arising from a suit instituted in 1969 by Michael Shakman, an independent candidate for the Illinois Constitutional Convention and Paul Lurie an independent voter who brought a class action for all independent candidates, independent voters and taxpayers. The defendants in the original complaint were various Cook County Democratic party officials and organizations including the Mayor of the City of Chicago.

We do not wish to unnecessarily elaborate on the seventy-page complaint at this point in view of the fact that both the factual and theoretical underpinnings of this case have already been more than adequately set out in both our first opinion in this case at 310 F.Supp.

---

Robert Plotkin, Chicago, Ill., C. Richard Johnson, Chicago, Ill., Roger R. Fross, Chicago, Ill., for plaintiffs.

1398 (N.D.Ill.1969) and in the Court of Appeals opinion at 435 F.2d 267 (7th Cir. 1970). We will simply outline a skeletal version of the allegations and a brief chronology of what has transpired in this case since 1969 in order that the motions we are now being asked to rule upon will be placed in their proper perspective.

Plaintiffs alleged that their constitutional rights as a candidate, taxpayers and voters were violated by the defendants' practice of coercing "patronage" employees as a condition of keeping their jobs to contribute money to the various Democratic organizations and candidates; to do political and campaign work both during their regular working hours and on their own time for candidates endorsed by the organization and its affiliates; and to vote for party candidates. Plaintiffs asserted that these coercive practices directly result in the defeat of independent candidates and perpetuates the dominance of the Democratic party in Cook County by enabling the defendants to coercively muster a massive army of political workers who are essentially paid with public money and whose discipline is maintained by the constant threat of job loss. It is this tactic, plaintiffs alleged which dilutes the votes of those seeking to elect non-organization candidates and which creates insurmountable odds for independent candidates in view of the fact that such candidates cannot match either the funds or campaign man hours derived from patronage employees.

All defendants filed multifaceted motions to dismiss the complaint which this Court granted in Shakman v. Democratic Organization of Cook County, 310 F. Supp. 1398 (N.D.Ill.1969) primarily on the grounds that the plaintiffs' constitutional rights were not infringed directly but rather derivatively by coercion of patronage employees and that plaintiffs therefore lacked standing and that furthermore the complaint was conclusory.

The Court of Appeals for the Seventh Circuit in Shakman v. Democratic Organization of Cook County, 435 F.2d 267 (1970) reversed our decision holding that plaintiffs did have standing, that the complaint was not fatally conclusory and that certain constitutional rights were violated if the defendants' alleged practices were true.

Shortly before the decision was handed down by the Court of Appeals, plaintiffs filed an amended complaint joining additional Democratic defendants and numerous Republican defendants. After much negotiation a consent order entered into by forty-two Democratic and Republican defendants was approved by this Court on May 5, 1972, the order declaring that:

D. . . . compulsory or coerced political financial contributions by any governmental employee, contractor or supplier, to any individual or organization and all compulsory or coerced political activity by any governmental employee are prohibited, and, once hired, a governmental employee is free from all compulsory political requirements in connection with his employment. However, governmental employees may engage on a voluntary basis, on their own time, in any lawful political activity (including the making of political financial contributions).

E. Each and all of the defendants and others named or referred to in paragraph C above are permanently enjoined from directly or indirectly, in whole or in part:

(1) conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time already a governmental employee, upon or because of any political reason or factor.

(2) knowingly causing or permitting any employee to do any partisan political work during the regular working hours of his or her governmental employment, or during time paid for by public funds; provided that nothing contained in this subparagraph (2) shall prohibit governmen-

tal employees from voluntarily using vacation time, personal leave time or from taking nonpaid leaves of absence to do political work, but permission to do so must be granted nondiscriminatorily.

(3) knowingly inducing, aiding, abetting, participating in, cooperating with or encouraging the commission of any act which is proscribed by this paragraph E, or threatening to commit any such act.

█ We have before us now numerous motions to dismiss filed by various defendants who declined to enter into the consent order. All of those defendants challenge the substantive merit of plaintiffs allegations while others challenge both the substance of as well as the procedural propriety of the complaint. What must be clearly understood is that any procedural or substantive ground must be decided not *sui generis* but within the framework of both the explicit and implicit meaning of the 7th Circuit's opinion in this case and taking into consideration that a great deal of the matter raised in the current motions are merely reiterations of arguments raised in the original motions to dismiss which the Court of Appeals indicated ought not be granted. We therefore have two basic groups of motions; 1) those by defendants whose procedural and substantive posture is identical with those defendants in the original complaint given their Cook County locus, i. e. Hanrahan, Elrod, Korzen and the Park District and whose disposition is explicitly determined by the Court of Appeals mandate despite the fact that they were joined after the Court of Appeals decision and 2) those defendants whose procedural posture is somewhat different from all other defendants given the fact that their scope of operation is outside of Cook County and whose procedural assertions were not explicitly dealt with either by this Court or by the Court of Appeals since those defendants were joined after the Appeals Court considered the procedural aspects of this case in terms of the Cook County de-

fendants. These latter defendants are the various Republican officials in counties other than Cook. (It might be noted that the defendants' political denomination is a function of the county of operation, most of the Cook County defendants being Democrats and all of the defendants outside of Cook County being Republicans.)

Our task then at this juncture is to interpret the perimeters of the Court of Appeals decision and to apply it to the various motions, both procedural and substantive, at hand. If we were to discuss even at moderate length each and every point in the multitude of motions filed, this opinion would swell to a size considerably larger than that of the seventy page complaint and we must therefore be satisfied with an in-depth discussion of only the more critical and conceivably meritorious elements of these motions.

## II.

Since all of the defendants' primary substantive grounds for seeking dismissal revolve around several recent cases and the interpretation of the Court of Appeals decision in our case, for the purposes of economy we will discuss these grounds jointly.

The Court of Appeals decided that:

Assuming the truth of plaintiffs' averments, and assuming that interests of theirs which are allegedly injured are rights, privileges, or immunities secured by the federal constitution, their standing to bring a § 1983 or § 1985 action is apparent . . ..

. . . the averments concerning the operation of the patronage system and the disadvantage it causes to candidates and voters who attempt to use the election process to change the direction of government are factual and give adequate fair notice of the claim asserted . . ..

The interests of candidates in official treatment free from intentional or purposeful discrimination are entitled to constitutional protection. "Where

discrimination is sufficiently shown, the right to relief under the equal protection clause is not diminished by the fact that the discrimination relates to political rights."

The equal protection clause secures from invidious official discrimination the voter's interest in a voice in government of equal effectiveness with other voters. . . . The interest in an equal chance and an equal voice is allegedly impaired in the case before us by the misuse of official power over public employees so as to create a substantial, perhaps massive, political effort in favor of the ins and against the outs. We conclude that these interests are entitled to constitutional protection from injury of the nature alleged as well as from injury resulting from inequality in election procedure. (435 F.2d at 269–270)

Several cases decided subsequently seem to indicate that public employment can be conditioned on political considerations and it is upon these cases that defendants place great reliance. In Alomar v. Dwyer, 447 F.2d 482 (2nd Cir. 1971) cert. denied, 404 U.S. 1020, 92 S. Ct. 683, 30 L.Ed.2d 667 (1972) the Court held that plaintiff's claim that she was discharged by the City of Rochester for her refusal to switch party affiliation failed to state a cause of action. Citing Bailey v. Richardson, 86 U.S. App.D.C. 248, 182 F.2d 46 (1950) to the proposition that "the sole protection for government employees who have been dismissed for political reasons must be found in Civil Service statutes and regulations", the Court went on to say that:

The spoils system has been entrenched in American history for almost two hundred years. The devastating effect that such a system can wreak upon the orderly administration of government has been ameliorated to a large extent by the introduction of the various Civil Service laws. However, it is well understood that the victors will reap the harvest of those public positions still exempt from such laws. Indeed many such positions are exempt because a new administration taking office can only carry out its policies by replacing certain officeholders. If and when additional exempt positions are to be subject to civil service protection is a matter for action by the appropriate municipal and state authorities and not by a federal court. (447 F.2d at 483–484)

Likewise in Burns v. Elrod, 71 C 607 (N.D.Ill. May 31, 1972) a suit arising from Democratic Sheriff Richard J. Elrod's discharge of the plaintiffs due to their Republican affiliations and their lack of Democratic sponsorship was dismissed by Judge Bauer based upon Alomar and Bailey supra. It should be noted that all three of these cases dealt with plaintiffs who were "patronage" employees and whose allegedly violated rights were personal ones rather than the rights of voters and candidates at large while our case is being brought by a candidate and voter-taxpayers alleging a much broader constitutional violation both qualitatively and quantitatively for the class of independent candidates, voters and taxpayers. Defendants assert that employee cases such as Bailey, Alomar and Burns are mutually interchangeable with and identical to voter cases such as Shakman, the injection of the broader voting rights adding nothing to the latter cases not present in the former cases and that consequently the finding of a failure to state a cause of action in the former category of cases compels a like decision in the latter category of cases. In addition defendants argue that even if our case is not identical to Alomar, dismissal would be in order since the plaintiffs' rights in our case are merely derivative of the rights of the patronage employees and since the primary right of public employment has been found to be nonexistent in Alomar, Bailey and Burns which indicate that patronage employees can be fired at "will" then the derivative right of candidates-taxpayers-voters must perforce also be nonexistent.

■ We cannot agree with defendants for several reasons. If we were to

accept the fact that the rights asserted in Shakman are identical with those asserted in *Alomar,* a fact which we do not concede for reasons which will presently become apparent, and if we were being asked to rule upon the motions presently before us for the first time absent any Court of Appeals guidance it is almost certain that we would find *Bailey, Alomar* and *Burns* more than adequate precedent for dismissal in our case. Indeed our opinion granting the motions to dismiss filed in 1969 is some indication of our view of the merits of this case. But we are not operating in a precedential vacuum. Rather we are bound by the decision of the Court of Appeals that has indicated in precise terms that constitutional violations as alleged in our case adequately state a cause of action. Whether or not we or the Second Circuit agree with that determination therefore becomes of passing interest only, given the rule established for the Seventh Circuit. If the Seventh Circuit had declared this rule in an earlier case other than, yet similar to ours, we would be compelled to adhere to that rule in our case and to disregard the pronouncements of other circuits— the path is all the more clear when that rule was declared in the very case before us. Thus, even if *Alomar, Bailey, Burns* and *Shakman* were of the identical genre a cause of action would be stated in the latter case given the Seventh Circuit opinion.

What course this Court would have been compelled to chart given a clear synonymity between these four cases however becomes all the more academic in the face of the fact that we believe there to be some very critical distinctions between employee cases of the *Alomar* genre and the candidate-voter-taxpayer cases of the *Shakman* class and that the two categories are to a great extent, though not totally, mutually exclusive. Thus, while *Alomar* et al. cannot be precedent for plaintiffs' allegations regarding voter candidate rights given the more critical nature of those rights it may nevertheless have some

bearing on those aspects of our case that deal solely with employee rights and do not in any way affect voter rights.

▆▆ In *Alomar* a single instance of discharge for political affiliation was alleged and the employment rights of one individual was involved. In our case, however, a comprehensive system of coercion which effects the entire electoral system as regards voters and candidates is alleged. It is this element of dilution of votes cast by independents for independents that enlarges the constitutional proportions of this case far beyond that of a simple employee case. Likewise, *Burns, supra* involved employee rather than voter rights and the rights allegedly violated did not reach either the qualitative or quantitative magnitude of our case. Ironically enough defendant Elrod, also the defendant in *Burns,* went to great lengths in *Burns* to convince the Court that the Seventh Circuit's opinion in *Shakman* involved voter and candidate rights while the former involved the lesser right of employment and that *Shakman* was therefore not binding on *Burns.* The *Burns* Court seemingly agreed with the defendant when it cited *Alomar* as the only relevant precedent and ignored *Shakman* completely in its opinion despite the numerous occasions it was mentioned in the briefs for both sides. Precedential streets are two-way streets and just as *Shakman* did not serve as precedent for *Burns, Burns* cannot serve as precedent for *Shakman* in regard to the *voting* rights involved. Finally it is important to note that both *Alomar* and *Burns* involved instances where one party won office over another party and the "ins" sought to reap the spoils of victory by discharging those employees who were vestiges of the "outs", in *Alomar* the Republicans dismissing a Democrat and in *Burns* a Democrat discharging Republicans. Our case however deals with the coercion by the "ins" of members of their own party in order to perpetrate and ensure that they remain the "ins". Thus *Alomar* and *Burns* being

clearly distinguishable they cannot be cited as precedent for our case.

Finally, certain acts are multifaceted in that the same act may produce multiple results some of which may be constitutionally permissable as regards one individual while at the same time being of a constitutionally violative nature as regards other individuals. Thus while the alleged acts in our case when viewed from one facet, the deprivation of employment, may not constitute an illegal practice, that same act when alleged as violating rights belonging to one other than against whom they were perpetrated, e. g. voters and candidates, may pose a constitutional violation. Hence the whole, the cumulative effect on voter-candidates-taxpayers of patronage coercion, may be greater in constitutional terms than the sum total of all of the parts, the effect of each isolated instance of patronage coercion on the employees personal, individual rights. It cannot therefore be said that the plaintiffs rights are merely derivative from the patronage employees primary right of employment but rather the plaintiffs rights are primary in and of themselves emanating in originality from an entirely different facet of the act being perpetrated against the patronage employees. Simply stated one act may produce two primary, mutually exclusive results, one constitutional and the other unconstitutional, the disposition of one having no bearing on the disposition of the other. Consequently the finding that the *Alomar* and *Burns* facets of political consideration are constitutional does not dictate a similar finding for the totally different *Shakman* aspect of political activity.

The Court of Appeals decision in our case being binding and *Alomar* and *Burns* being distinguished we deny that part of defendants' motions which asserts that no cause of action has been stated regarding voter-candidate-taxpayer rights.

At the same time, however, we believe the reciprocal of this concrete distinction between *Alomar-Burns* and *Shakman* to be that those practices not directly affecting voter-candidate rights and which affect employee rights alone are not governed by the *Shakman* opinion. In other words just as *Alomar* and *Burns* do not govern the constitutionality of the coerced campaign work and contributions, *Shakman* does not govern any patronage practices which do not in any way violate plaintiffs' rights. In those instances where employee rights *alone* are involved *Alomar* and *Burns* is clear precedent that there is no constitutional violations in basing public employment on political considerations. Thus we believe that the relief sought by plaintiffs reaches far beyond that mandated by the Court of Appeals and seeks to enjoin acts totally out of the scope of both the Court of Appeals decision and what we believe to be the law, given the lack of any relationship between these acts and the voter-candidate allegations of plaintiffs. It is to this aspect in particular that the Park District's memorandum addresses itself.

Defendant Park District argues that the Court of Appeals decision in no way indicates that the portion of the complaint which prays for a declaration that plaintiffs' rights are violated by "the conditioning . . . of employment . . . upon an employee's present or future support of the Democratic Party . . ." ought to be granted and that on the contrary *Alomar* and *Burns* indicates that some political considerations in public employment are permissible. The Park District states that the principal of the Court of Appeals decision in *Shakman* "is not that a cause of action arises from the hiring or firing of patronage employees based on political considerations, but rather that a cause of action arises from the hiring and firing of such employees when affected solely to coerce contributions of funds and political activity . . ." (Chicago Park District memo. in support of motion to dismiss p. 4). The Park District goes on to argue that coerced political activi-

ty is prohibited by the Appeals decision only when done on public time and not when done on the employees own time.

It is for this reason that the Park District refused to sign the consent decree objecting in particular to part E(1) which prohibits:

> . . . conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time already a governmental employee, upon or because of any political reason or factor.

We concur with the Park District's interpretation of the Court of Appeals decision except for the limitation of prohibited coercion only to public time and we agree that part E(1) of the consent decree is neither mandated by the Court of Appeals or any case-law. The Court of Appeals decision both explicitly and implicitly indicated that *any* activity which *effects the voter-candidate-rights* of plaintiffs is prohibited and we believe that no distinction ought to be drawn between coerced political activity which is performed on public time and that performed on the employees own time if it emanates from that same source of coercion since both activities result in violations of plaintiffs' rights. Nowhere, however, does the Court of Appeals state that *all* political considerations are prohibited in public employment. It is in this respect that *Alomar* and *Burns* are extremely relevant and the employee facet predominates over the voter facet. While neither case is precedent for the premise that *coerced political activity* is permitted they are precedent for the fact that the "ins" can discharge the "outs" for any reason so long as that reason does not affect the rights of voters and candidates. In *Alomar* incoming Republicans discharged an outgoing Democrat and in *Burns* an incoming Democrat discharged outgoing Republicans. In neither case did the discharge affect voter or candidate rights.

■ It is this interpretation that avoids any conflict between *Shakman* and *Alomar-Burns*, the three cases read in conjunction meaning that political considerations in public employment are only forbidden where those considerations affect voter-candidate-taxpayer rights and that in all other respects patronage employees may be hired or fired based on political affiliation.

■ We therefore hold that *Shakman* prohibits only political considerations *which effect voter and candidate rights.* The firing of Republicans by incoming Democrats and vice versa is permitted so long as retention is not conditioned on coerced political activity or contributions. Likewise, Republicans have every right to hire only Republicans and Democratic office holders have every right to hire only Democrats so long as coerced political activity is not a condition of that employment. It is this manner of political spoils system that *Alomar* referred to when it stated:

> The spoils system has been entrenched in American history for almost two hundred years. The devastating effect that such a system can wreak upon the orderly administration of government has been ameliorated to a large extent by the introduction of the various Civil Service laws. However, it is well understood that the victors will reap the harvest of those public positions still exempt from such laws. (447 F.2d at 483)

Such activity in no way effects the rights claimed by defendants in this case. We therefore grant the defendant's motion to strike and dismiss those portions of the complaint which assert violations of rights through any political activity which does not affect voter-candidate-taxpayer rights and strike that portion of the prayer for relief which seeks the enjoining of *all* and *any* political considerations in public employment. We might add that Section E(1) of the consent order entered on May 5, 1972 is totally unnecessary under *Shakman, Alomar* and *Burns* and we will entertain mo-

tions to eliminate that clause from the consent decree.

### III.

■ Counts VII and VIII of the first amended complaint concern Republican patronage acts and practices alleged to prevail in various counties other than Cook, all of these counties in the Northern District of Illinois. These counts were brought as a class action as were the first counts concerning the Democratic defendants. Motions to dismiss these counts were filed by defendant county Republican party central committees and committee chairmen outside Cook County. The motion has been joined by defendant county officers in Lake, DuPage, Winnebago, McHenry and Will counties. DuPage County officers filed an additional motion to dismiss in which the Lake County officers have joined. The crux of these motions is that for various reasons plaintiffs have no standing and that furthermore numerous additional indispensable Democratic and Republican officers have not been joined.

The Court of Appeals found that a class action was proper and that standing did exist. Defendants in Counts VII and VIII claim that the Court of Appeals decided these issues only as to the Cook County defendants and that the former defendants being residents of counties other than Cook are in a position distinct from the latter defendants, a position which compels a finding of lack of standing. We disagree. Both plaintiffs' individual rights and the rights of the class of independent voters, candidates and taxpayers they represent are affected by patronage practices outside of Cook County especially in those elections for State-wide office and where State-wide propositions are involved. We find no critical difference in regard to standing and the class represented between the Cook County defendants and those defendants. The other requirements of standing and a class action being met the defendants' motions as-

serting deficiencies in this regard are denied.

■ Neither do we find any deficiency in the fact that plaintiffs have not joined every Republican and every Democrat in the Northern District of Illinois. The Court of Appeals stated:

We note the argument, made by several defendants that the complaint is fatally deficient for failing to join as defendant the Republican party. We find no merit in the proposition. (435 F.2d at 271)

In view of the fact that no additional parties were found to be necessary, defendants cannot now claim that the complaint is defective for not adding more parties than they already have.

We have carefully considered all of the other motions by defendants in Counts VII and VIII regarding standing, class action, the existence of an actual controversy; the various other assertions regarding specificity of the allegations and injury; the motions to strike and the motion for a more definite statement and find them all to be without merit. We therefore deny each and every motion.

Likewise we have carefully considered all of the aspects of defendant Democrats' motions not specifically mentioned earlier such as the "equity", class action and jurisdictional amount questions raised by the Park District and defendants Elrod, Hanrahan, and Korzen's motions to dismiss for lack of jurisdictional amount, for lack of jurisdiction over the subject matter, for failure to join indispensable parties, for failure to state an actual case or controversy, for failure to be specific about the acts alleged and the injury suffered, for improper class action, and for ambiguity and vagueness and we find each and every one of these issues to be without merit or to have been explicitly or implicitly included and precluded by the Court of Appeals opinion.

In summary, all of the defendants' motions to strike, both Democratic and Republican are denied except for the

Park District's motion to strike and dismiss those portions of the complaint which seek to enjoin political considerations and actions which have no bearing upon the rights of the plaintiff's as candidates, voters and taxpayers.

We grant that motion as to those portions of the complaint which address themselves to activities and relief beyond the scope of voter-candidate rights such as the hiring and firing of employees based on political considerations where not affecting voter-candidate rights.