**INDIANA STATE EMPLOYEES ASSO-CIATION, INC. et al.**

v.

**Harold NEGLEY et al.**

**No. IP 73–C–21.**

United States District Court,
S. D. Indiana,
Indianapolis Division.

March 16, 1973.

Ronald Elberger, Donald R. Anderson, of Bose, Buchanan, McKinney & Evans, Indianapolis, Ind., for plaintiffs.

Theodore L. Sendak, Atty. Gen. of Indiana by Richard Johnson, and Sheldon Breskow, Deputy Attys. Gen., Indianapolis, Ind., for defendants.

## MEMORANDUM OPINION

NOLAND, District Judge.

This memorandum of decision is intended to satisfy the requirements of Rule 52(a) of the Federal Rules of Civil

Procedure and constitutes the findings of fact and conclusions of law herein.

Plaintiffs, on behalf of themselves and all others similarly situated[1] have brought this action for injunction, damages, and declaratory judgment alleging that the defendant Harold Negley, State Superintendent-Elect of Public Instruction[2] through an employee of the State Department of Corrections acting on his behalf, had informed plaintiffs of their discharge, effective March 15, 1973. Plaintiffs contend that said discharges are due solely to plaintiffs' political party affiliation and allegiance in violation of plaintiffs' freedom of association as guaranteed by the First Amendment to the United States Constitution. Concomitantly, plaintiffs now move the Court for a preliminary injunction restraining the defendants from discharging plaintiffs pending final decision on the merits of this case.

The Court, therefore, is being called upon to make a determination as to the propriety of a preliminary injunction which, if granted, would change the system of public employment as practiced in this state. Although this lawsuit theoretically affects only a small number of employees in the Indiana Department of Public Instruction, in actuality, it could well affect the status of public employees at every level of Indiana government.

■ The principal purpose of a preliminary injunction is to preserve the status quo pending final determination of the controversy. 7 Moore's Federal Practice, ¶ 65.04 [1] at 65–36 [hereinafter referred to as *"Moore's"*]. Preservation of the status quo in this case requires the Court to allow continued op-

eration of the patronage system of public employment in Indiana.

While an application for preliminary injunction is addressed to the Court's discretion, the power to issue such an interlocutory injunction should be used sparingly and such relief should not be granted except in rare instances in which the law and facts are clearly in the moving parties' favor. *Id.* at 65–35, 65–38; Miami Beach Federal Savings & Loan Association v. Callander, 256 F.2d 410 (5th Cir. 1958). In determining whether plaintiffs have sustained their burden of establishing the propriety of a preliminary injunction in this cause, the Court is called upon to exercise its discretion upon consideration of the following factors: (1) The probability that plaintiffs will prevail on the merits; (2) The probability of plaintiffs suffering irreparable injury unless the injunction is issued; and (3) Balancing of the interests of the parties with special consideration of the public interest. See: 7 *Moore's,* ¶ 65.04 [1] at 65–39 to 65–53; Perry v. Perry, 88 U.S.App.D.C. 337, 190 F.2d 601, 602 (1951); Virginian R. Co. v. System Federation, 300 U.S. 515, 552, 57 S.Ct. 592, 81 L.Ed. 789; Yakus v. United States, 321 U.S. 414, 440–441, 64 S.Ct. 660, 88 L.Ed. 834 (1944).

Although plaintiffs attempt to characterize this controversy as one involving the derogation of the constitutional rights of the named plaintiff-employees and others similarly situated in the Indiana Department of Public Instruction, the facts of this case as presented to the Court and conceded in the final argument of plaintiffs show that this could well be a test case which would impose

---

1. Plaintiffs state they are employees of the Department of Public Instruction and are suing on their own behalf and on the behalf of all other employees of the Department of Public Instruction who are allegedly facing discharge because of their political affiliation.

2. As a result of the state election held in November 1972, defendant Negley, a Republican, became State Superintendent-Elect of Public Instruction, and will commence his term of public office on March 15, 1973. Defendant Loughlin is the current State Superintendent of Public Instruction, and his term of public office will expire on March 15, 1973.

an absolute tenure system of public employment in the State of Indiana without any legislation whatsoever. Responding to a similar situation, other courts have made it clear that the question of whether or not to adopt a tenure system of state public employment is the proper prerogative of the State Legislative and Executive branches of government and should be instituted only by their concurrent action in accordance with the state constitution.

The Court is of the opinion that plaintiffs have failed to sustain their burden of showing a likelihood of success on the merits of their action, because they have been unable to establish a right to the retention of jobs obtained through the system of political patronage. As so aptly stated by the Supreme Court of Pennsylvania in American Federation of State, C. & M. Emp. v. Shapp, 443 Pa. 527, 280 A.2d 375, 377 (1971):

> "It has long been the established law in both the Federal Courts and the Courts of our Commonwealth, that a public employer, including as such the Government, may summarily discharge a person in the employ of the Government, absent controlling legislation."

Similarly, in Cafeteria & Rest. Wkrs. U. Local 475 v. McElroy, 367 U.S. 886, 896, 81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230, the U.S. Supreme Court held that:

> "It has become a settled principle that government employment, in the absence of legislation, can be revoked at the will of the appointing officer. In the Matter of Hennen, 13 Pet. 230, 246, 259, 10 L.Ed. 138; Crenshaw v.

United States, 134 U.S. 99, 108, 10 S. Ct. 431, 434, 33 L.Ed. 825; Parsons v. United States, 167 U.S. 324, 331–334, 17 S.Ct. 880, 882–883, 42 L.Ed. 185; Keim v. United States, 177 U.S. 290, 293–294, 20 S.Ct. 574, 575, 44 L.Ed. 774; Taylor and Marshall v. Beckham (No. 1), 178 U.S. 548, 575–578, 20 S. Ct. 890, 900–901, 44 L.Ed. 1187. This principle was reaffirmed quite recently in Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012. There we pointed out that Vitarelli, an Interior Department employee who had not qualified for statutory protection under the Civil Service Act, 5 U.S.C.A. § 632 et seq., 'could have been summarily discharged by the Secretary at any time without the giving of a reason * * *.' 359 U.S. at page 539, 79 S.Ct. at page 972."

The evidence presented at the hearing in this cause demonstrates the sharp factual disputes between the parties. Plaintiff contends that defendant Negley was motivated solely by political considerations such as party affiliation and campaign activism in causing notice of termination to be given to the individual plaintiffs. The defendant Negley, however, contends that his principal reasons for the discharge of said plaintiff-employees [3] are lack of experience, political sabotage, low moral character, lack of ability, and conflicting loyalties opposed to the policies which defendant Negley intends to implement upon taking office as the Superintendent of Public Instruction on March 15, 1973.[4] Similarly, the evidence presented by the parties as to whether the individual plaintiff-employees are "policy making

---

3. According to the affidavit of defendant Harold Negley, he or someone acting on his behalf has interviewed eighty (80) employees of the Department of Public Instruction with respect to their retention or dismissal under his administration. Out of the eighty, defendant Negley has indicated to sixty-three (63) employees that he intends to retain them and has communicated his intention to terminate the services of seventeen (17) of said employees. When consideration is given to

the fact that the Department of Public Instruction currently has over 300 employees, it appears doubtful at this stage of the proceedings that defendant Negley intends to institute a wholesale house cleaning of the Department along party lines.

4. The parties have stipulated to the voluntary dismissal of defendant Loughlin effective March 15, 1973.

employees"[5] within the meaning of Illinois State Employees Union Council 34, et al. v. Lewis, 473 F.2d 561 (7th Cir., 1972) is inconclusive and leads to diametrically opposed conclusions. It is sufficient for the Court to observe at this point in the proceedings that plaintiffs have not introduced evidence of such weight as to indicate a probable likelihood of establishing their factual allegations. Accordingly, it is the conclusion of the Court that consolidation of the hearing on plaintiffs' motion for preliminary injunction with trial on the merits would unduly restrict the Court's ability to resolve the factual issues and, thus, would be improper in this case.

The current status of the facts in this case and the law applicable thereto clearly indicates that the Court need not go as far as the Second Circuit did in Alomar v. Dwyer, 447 F.2d 482, 483 (2d Cir. 1971) to reach a proper result when it held:

> " '. . . the . . . hard fact is that so far as the Constitution is concerned there is no prohibition against the dismissal of Government employees because of their political beliefs, activities or affiliations' . . . . [T]he sole protection for government employees who have been dismissed for political reasons must be found in civil service statutes or regulations." See also Bailey v. Richardson, 86 U.S.App.D.C. 248, 182 F.2d 46, 59 (1949).

The First Amendment guarantees freedom of speech and assembly, but it does not guarantee government employment. Bailey v. Richardson, 86 U.S.App.D.C. 248, 182 F.2d 46, 59 (1949). Therefore, whether plaintiffs' positions with the Department of Public Instruction should be exempted from the Superintendent's discretionary power to terminate their employment is a matter for action by the appropriate state authorities and not a federal court. Alomar v. Dwyer, 447 F.2d 482, 484 (2d Cir. 1971).[6] An Article III court which derives its power from the concurrent acquiescence of the executive and legislative branches of government should be reluctant to invade the accepted areas reserved to state legislative and executive bodies rather than to impose from without a mandate upon duly elected officers.

The impropriety of a preliminary injunction in the instant case is made even more evident when consideration is given to the nature of plaintiffs' injury and

---

5. Plaintiffs place heavy reliance on Illinois State Employees Union Council 34, et al. v. Lewis, 473 F.2d 561 (7th Cir. 1972), and have, as a result, attempted to introduce evidence showing that the individual plaintiff-employees are "non-policy making employees." Applicability of Lewis to the instant case is, however, somewhat doubtful in light of Judge Stevens' statement that: "We merely hold that the district court committed error when he entered summary judgment for the defendant. The record does not support a factual finding that no plaintiff was dismissed for an impermissible reason or the legal conclusion that defendant was justified in prescribing active support of the Republican Party as a condition of continued public employment." When this narrow holding is compared with the reasoning of Alomar v. Dwyer, 447 F.2d 482 (2d Cir. 1971); American Federation of State, County and Municipal Employees, et al. v. Shapp, 443 Pa. 527, 280 A.2d 375 (1971); Bailey v. Richardson, 86 U.S.App.D.C. 248, 182 F.2d 46 (1950), and Cafeteria Restaurant Wkrs. U. Local 473 v. McElroy, 367 U.S. 886, 896, 81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230, the Court concludes that the Seventh Circuit intended to limit Lewis to its facts.

6. It should be noted that plaintiffs' discharges are not of such a nature as to operate to bestow a badge of disloyalty or infamy with an attendant foreclosure from other employment opportunity as could give rise to a due process violation. See: Alomar v. Dwyer, 447 F.2d 482, 483 (2d Cir. 1971); Cafeteria & Rest. Wkrs. U. Local 473 v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 1750, 6 L.Ed.2d 1230 (1961); Wieman v. Updegraff, 344 U.S. 183, 190–191, 73 S.Ct. 215, 218–219, 97 L.Ed. 216; Joint Anti-Facist Refugee Committee v. McGrath, 341 U.S. 123, 140–141, 71 S.Ct. 624, 95 L.Ed. 817; cf. Bailey v. Richardson, 86 U.S.App.D.C. 248, 182 F.2d 46 (1950).

a balancing of the interests of the parties with the public interests which would be affected by such an interlocutory injunction.

■ The immediate harm to plaintiffs which will occur unless the requested preliminary injunction is granted is no doubt very substantial. Their employment with the Department of Public Instruction may well be terminated on March 15, 1973. This Court, like the Pennsylvania Supreme Court in American Federation of State, C. & M. Emp. v. Shapp, 443 Pa. 527, 280 A.2d 375 (1971) cannot, however, conclude that such harm is irreparable since the plaintiffs could be substantially restored to the status quo ante through the remedies of reinstatement and the award of back pay.

■ Many positions of state employment such as those of plaintiffs are exempted from statutory protection in Indiana and other states, because a new administration taking office is only able to carry out its policies by replacing certain officeholders. See Alomar v. Dwyer, 447 F.2d 482, 483, 484 (2d Cir. 1971). It is very doubtful that a solidified state bureaucracy impervious to the popular will[7] is in the long run a benefit to society. See Bailey v. Richardson, 86 U.S.App.D.C. 248, 182 F.2d 46, 59 (1950). The public interest with reference to the tenure of state agency employees was clearly illustrated by the Pennsylvania Supreme Court as follows:

" . . . '[G]ood administration requires that the personnel in charge of implementing the policies of an agency be responsible to, and responsive to those charged with the policy-making function, who in turn are responsible to a higher governmental authority, or to the public itself, whichever selected them. *This chain of responsibility is the basic check on government pos-* sessed by the public at large.' " (Emphasis added) American Federation of State, C. & M. Emp. v. Shapp, 443 Pa. 527, 280 A.2d 375, 378 (1971); Mitchell v. Chester Housing Authority, 389 Pa. 314, 132 A.2d 873, 880 (1957).

In accordance with *Shapp, supra,* the Court concludes that the public interest in a responsible state government service outweighs the harm which will result to plaintiffs unless the preliminary injunction is granted.

It is further the opinion of the Court that the Court or Judge should not permit itself to be hastened into making what might be described as a "hit and run" decision before the public at large and other interest groups, who may well have a legitimate position in this litigation, become aware of the far reaching issues presented in this cause of action. What is required here is a balancing of interests of employees as a part of state government, along with the interests of the public at large, in maintaining a governmental instrument responsive to the will of the people as it may be manifested in elections from time to time. If the plaintiffs were asking that the Court by judicial order institute a civil service system similar to the federal system, it would likely be clear that this could not be accomplished. On the other hand, the plaintiffs are requesting an order from this Court wherein the results will be in effect a tenure system without the benefits of having first imposed merit requirements upon those who seek and hold the positions in question.

■ The award of a preliminary injunction has never been regarded as a strict matter of right, even though plaintiff might otherwise sustain irreparable injury. Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834 (1944). The Supreme Court has

7. The Indiana electorate expressed a preference for the policies advocated by defendant Negley in the last election. The results of the November 1972 election were: Negley, 1,129,636 votes; Loughlin, 916,342 votes.

clearly stated that where an injunction will adversely affect the public interest the impairment of which cannot be compensated:

"[T]he court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff. . . . This is but another application of the principle, declared in Virginian R. Co. v. System Federation, 300 U.S. 515, 552, 57 S.Ct. 592 [601], 81 L.Ed. 789, that 'Courts of equity may, and frequently do, go much further both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.'" Yakus v. United States, 321 U.S. 414, 440–441, 64 S.Ct. 660, 675 (1944).

For this Court to grant a preliminary injunction before hearing all the evidence at issue in this lawsuit would be to invite immediate recourse to the Court by public employees at all levels of Indiana government, thereby raising the spectre of a potentially staggering volume of litigation springing forth from every county in this state.[8] This realistic assessment of the prospective impact of a preliminary injunction in this case illustrates not only the telling force of Judge Campbell's remarks in *Lewis*, but also the soundness of the following observation made in Bailey v. Richardson, 86 U.S.App.D.C. 248, 182 F.2d 46, 62 (1950):

"The judiciary cannot assume responsibility for the sufficiency of the qualifications of executive employees without assuming corresponding responsibility for the conduct of executive affairs."

For the foregoing reasons, the Court concludes that plaintiffs' motion for preliminary injunction should be denied.

8. See the concurring opinion of Judge Campbell in Illinois State Employees Union Council 34, et al. v. Lewis, 473 F.2d 561 (7th Cir. 1972).