Mildred D. TOM, Plaintiff,

v.

Michael F. SHEAHAN, as Sheriff of Cook County, and as an individual, and Cook County, Illinois, Defendants.

No. 91 C 3236.

United States District Court, N.D. Illinois, E.D.

Oct. 12, 1993.

Michael T. Hannafan, William E. Blais, Michael T. Hannafan & Associates, Ltd., Chicago, IL for plaintiff.

Karen J. Dimond, Jack O'Malley, Cook County State's Attorney's Office, Chicago, IL for defendants.

### OPINION AND ORDER

NORGLE, District Judge:

Before the court is the motion for summary judgment of defendants Michael F. Sheahan ("Sheahan") and Cook County, Illinois ("Cook County") (sometimes collectively referred to as "defendants"). For reasons stated below, the motion is granted.

### BACKGROUND

Plaintiff Mildred D. Tom ("Tom") worked for Cook County from 1976 until her dismissal in December 1990. Tom was a political supporter of Cook County's former sheriff, James O'Grady ("O'Grady"), and was hired by him in 1987 to work in the sheriff's office. Tom began working as an Administrative Assistant II, received salary Grade level 14, and performed duties that included opening the office, making coffee, taking messages, sorting the mail, filing, and typing. Tom was promoted in February 1990 to the position of Administrative Assistant III with a salary increase to Grade level 16. Shortly after O'Grady's defeat in the 1990 election on November 9, defendants' evidence shows that the Personnel Director, James Hogan ("Hogan"), instructed the Payroll Supervisor, Louise Terlep ("Terlep"),[1] to change Tom's grade from 16 to 21 and Tom's position from

---

1. There is some discrepancy in the record as to the spelling of the Payroll Supervisor's name. The court will accept and use "Terlep," which is the spelling used on the face of her deposition.

Administrative Assistant III to Assistant Finance Director, retroactive to November 1, 1990. Tom's job duties did not change. Tom disputes that Hogan told Terlep to promote her to Assistant Finance Director and insists that Hogan intended Tom to be promoted only to a Grade level 18 position.

 Sheahan, the newly-elected sheriff, took office on December 3, 1990 and discharged Tom from her position on December 7, 1990. Tom claims this termination decision was politically motivated, and thus violated her rights under the First Amendment to the United States Constitution, which is actionable under 42 U.S.C. § 1983 and is a violation of the *Shakman* consent decree. *See Shakman v. Democratic Organization of Cook County*, 356 F.Supp. 1241 (N.D.Ill. 1972).

In *Shakman*, a consent decree enumerated the positions within the Cook County government that are exempt from the general prohibition against political firings. *Cf. Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980) (public employees cannot be terminated or otherwise subjected to adverse employment decisions solely for political reasons). The listed positions are exempt because they allow for meaningful input into government decisionmaking involving important policy areas. *See Tomczak v. City of Chicago*, 765 F.2d 633, 641 (7th Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985). Included in the consent decree list is the position of Assistant Finance Director as well as five Administrative Assistants to the Sheriff. Defendants claim that Tom occupied the position of Assistant Finance Director and was therefore subject to termination for political reasons, or that her Administrative Assistant III position is exempt. Tom claims her position was neither Assistant Finance Director nor Administrative Assistant to the Sheriff, but that she was an Administrative Assistant III, which is not exempt.

The undisputed facts are as follows. According to the official payroll records of the Sheriff's office, Tom held the position of Assistant Finance Director at the time of her termination. Hogan authorized a pay raise from Grade 16 to Grade 18 for Tom. Terlep made a change on the "Report in Change of Payroll Form" pursuant to her job as Payroll Supervisor. This change reflected Tom's Grade as 21, step 00, which paid Tom less money than the usual salary for Grade 21. That new salary, however, equals that of a Grade 18, step 4. When Hogan asked Terlep to promote Tom, there were no Administrative Assistant III positions available in the Grade 18 category. When an employee is promoted to a different Grade, that person must be given a new job title because the Grade belongs to the job title. Hogan knew a change in job title must accompany Tom's change in Grade. The evidence shows that, when Sheahan took office, Sheahan's Director of Finance, James O'Sullivan, and the new Director of Personnel, Marynell O'Connell, eventually examined the personnel files of the office and became aware that Tom was listed as the Assistant Finance Director, a position for which Tom acknowledges she was unqualified.

Tom asserts, and the court accepts in her favor, that she was never notified of any change in her position and that she never performed the duties of Assistant Finance Director.[2] Tom admits that she was given a pay raise in November 1990, but claims it was from Grade 16 to Grade 18. And although Terlep filled out the "Report in Change of Payroll Form" assigning Tom to the position of Assistant Finance Director at salary Grade 21, Tom claims that the Payroll Supervisor had no authority to make this change, citing to the deposition testimony of Hogan. Also, a five grade increase from 16 to 21 would be unusual.

Hogan states that he was in charge of the promotion of employees in the Cook County Sheriff's Office. Hogan had no intention to make Tom exempt, according to his affidavit. Hogan affirms that he authorized a pay raise for Tom from a Grade 16 to Grade 18 and that the job title of Administrative Assistant III was not eligible for a Grade 18 salary. Hogan admits that it was therefore necessary to give Tom a new job title which could receive a Grade 18 salary. It was Hogan's

---

2. Tom's duties do not truly match those of an Administrative Assistant III either.

intention and expectation, he says, to assign Tom another non-exempt title.

It is apparent that Hogan wanted to give Tom a raise and place her in a position that would provide her a salary commensurate with a Grade 18. The evidence suggests that the only vacancy available which would provide her a comparable salary may have been that of the Assistant Finance Director. That may not have been the only position, however; there may have existed non-exempt positions that Tom does not identify. But it is not disputed that Tom could not remain as an Administrative Assistant III and receive a Grade 18 salary. Moreover, Tom has produced no evidence to contradict that there were no remaining Grade 18 positions available in the budget. It is also undisputed that Terlep did make the change on the "Report in Change of Payroll Form" and sent the form to the County Comptroller. Tom also claims that Sheahan's administration never attempted to learn what Tom's actual duties or qualifications were and claims that they failed to reclassify Tom according to the duties she actually performed.

### DISCUSSION

To grant summary judgment "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The nonmoving party must elucidate specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). A scintilla of evidence will not suffice to oppose a motion for summary judgment. *Brownell v. Figel,* 950 F.2d 1285, 1289 (7th Cir.1991). More important to the disposition of this case, a dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Consistent with Seventh Circuit precedent, *see Upton v. Thompson,* 930 F.2d 1209, 1212 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992); *Tomczak,* 765 F.2d at 640, this court has previously emphasized that the determination whether a person occupies a position for which political affiliation is an appropriate requirement depends not on the actual job duties performed by the person occupying the position, but depends on the powers inherent in the office. *See Diamond v. Chulay,* 811 F.Supp. 1321, 1329 (N.D.Ill.1993). In clear cases this standard is easy to apply. The decision depends not on whether it walks like a duck or talks like a duck, but depends, at least in part, on whether it is considered a duck by the municipality or administration. *But see Heck v. City of Freeport,* 985 F.2d 305, 309 n. 1 (7th Cir.1993) (court was "slightly troubled" by fact that plaintiff's actual duties did not perfectly match official responsibilities under Municipal Code). The consent decree makes it clear that the Assistant Finance Director position, regardless of how circumscribed the duties and responsibilities of the officeholder are, is a position which inherently possesses influence over important policy decisions.

Notwithstanding the unquestionably exempt status of the Assistant Finance Director position, the parties dispute the actual title Tom held. The court must determine whether the dispute is genuine. The case *sub judice* boils down to two basic questions: Did Hogan and Terlep's actions achieve an actual, effective transformation in Tom's position? And if so, was the change a pretext attributable to defendants?

The first question may depend on whether Terlep acted outside her scope of authority as Payroll Supervisor when she changed Tom from Administrative Assistant III to Assistant Finance Director. Her failure to properly effectuate the change may void the promotion. Nonetheless, Hogan requested a change in job title which was required for a change in Grade level. Tom has failed to controvert that there were no available positions at the same salary as a Grade 18 other than Assistant Finance Director. Tom does not produce any evidence that Hogan told Terlep to give Tom a particular job title and there is no evidence that Hogan informed

Terlep that Tom was to be given only a non-exempt position. Terlep states that it was common for the O'Grady administration to assign titles to individuals who were not actually performing the duties of the particular job in order to guarantee a higher salary. The change in job title to Assistant Finance Director was recorded and sent to the County Comptroller Office. Though Hogan states Terlep did not have authority to make the change, Tom admits that she was occupying the position of Assistant Finance Director at the time she was fired, albeit through the wrongful actions of Terlep.[3] *See* Pltf.'s Brief in Opposition to Def.'s Motion for Summary Judgment, at 7.

The dispute over the intentions and expectations of Hogan and the dispute about the motive behind Terlep's action are not genuine disputes over material facts. The end result is the same: Tom held the position of Assistant Finance Director which is exempt under the *Shakman* consent decree. Tom admits that she was Assistant Finance Director at the time she was fired, thus tacitly acknowledging that the promotion did go into effect. Tom merely argues that the promotion was made only as a pretext in order to effectuate her termination. Though it may have been a mistake on Terlep's part, an unintended consequence, or executed through Terlep's personal motives, Tom's promotion was accomplished during and within the course and scope of Terlep's employment as Payroll Supervisor, and was accomplished through the direction of Hogan's general request. Tom may be the victim of an intentional or accidental transmogrifica-

tion. Nonetheless, the court concludes from the undisputed facts that the promotion was effective.

Tom's evidence submitted in opposition to defendants' motion for summary judgment shows, at best, that Terlep may have born a personal motive to make an unauthorized change in Tom's position.[4] Tom's evidence of malicious motive is that Terlep, who held an exempt position, perceived that she was in danger of losing her job after spending her entire career in the Sheriff's office. Tom asserts that Terlep wanted to demonstrate her loyalty to Sheahan by carrying out Hogan's instructions to the extreme. She thus placed Tom, who was politically active for Sheahan's opponent, in an exempt position which would permit Sheahan to fire her. Tom maintains that this evidence and the inferences therefrom demonstrate a pretextual maneuver to remove her from a protected post in order to legally terminate her.

Nonetheless, Tom's assertion that this promotion was a sham cannot prevail. Tom fails to comprehend one important factor: the defendants did not make the promotion. The "sham" promotion came not from the directive of Cook County policymakers for the Sheriff's Office or from Sheahan, but was a result of the bungling or motives of one of O'Grady's employees, Terlep. The absence of evidence suggesting Sheahan authorized or directed a promotion of Tom merely to effectuate a political firing therefore destroys Tom's argument that her placement was a politically motivated pretext of the defen-

---

3. Tom's argument in opposition to defendants' motion for summary judgment is that the promotion was a pretext because she never changed job duties. Tom does not state that Terlep's lack of authority to make the change rendered the change void. Tom may hint that there was no authority, but does not support that position with legal arguments or with facts to destroy Terlep's actions promoting Tom to an exempt position. The authority of an employee may be actual, implied, or inherent. Tom's "skeletal argument," unsupported by any authority, facts, or reasoning, is a mere assertion which does not sufficiently raise the issue to merit the court's consideration. *United States v. Giovannetti,* 919 F.2d 1223, 1230 (7th Cir.1990) ("A litigant who fails to press a point by supporting it with *pertinent* authority or by showing why it is a good

point despite a lack of authority ... forfeits the point. We will not do his research for him") (emphasis in original; citations omitted); *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs"); *see Hanrahan v. Thieret,* 933 F.2d 1328, 1335 n. 13 (7th Cir.1991) (quoting *Dunkel* ). The court thus finds there is no genuine dispute about this particular issue.

4. It also seems plausible that Terlep incorrectly interpreted Hogan's directive to find a job title that would provide Tom with a salary at Grade 18, or that she found a position that would carry out Hogan's directive unaware that the position was exempt. The court will not, however, consider these alternatives because it must draw the inferences in favor of Tom.

dants for her firing. To be liable, Sheahan must have either personally directed the unconstitutional act, or the unconstitutional act must have been an official policy of the defendants. *See, e.g., Fiorenzo v. Nolan,* 965 F.2d 348, 350–51 (7th Cir.1992) (official may be liable if he possessed final policymaking authority and officially ordered, sanctioned, or approved decision); *Schultz v. Baumgart,* 738 F.2d 231, 238–39 (7th Cir.1984) (defendant not personally liable for decision he did not participate in). No evidence links Sheahan or his own staff to this "pretextual" promotion, nor is there evidence that the promotion itself was part of the official policy or custom of defendants in terminating the political opposition.

It is undisputed that Hogan did direct a pay raise and that a change in job title necessarily accompanies any change in Grade level. By virtue of Terlep's actions, Tom was assigned the position of Assistant Finance Director. Sheahan became aware that the Assistant Finance Director position was occupied by Tom and fired her in order to fill the position of Assistant Finance Director. The only method by which Sheahan could fill the position was to fire Tom. If a new administration desires to fulfill the mandate of the voters and to clean-up office, its policymakers should have the ability to fire people who occupy those positions for which political loyalty is an appropriate job qualification, even if those people have not been important to the previous administration. To accomplish its goals, the new administration must free up those positions in order to fill them with political compatriots.

 Tom's suggestion that Sheahan should have learned what Tom's actual duties or qualifications were, and that he was required to reclassify Tom according to the duties she actually performed also misses the point. As discussed above, a municipal officer need not be concerned about how the previous administrations utilized the person holding an exempt position. *Diamond,* 811 F.Supp. at 1329. Similarly, the present administration need not reclassify an individual who occupies an exempt position to conform that person's actual job duties to another position within its administration. Tom was placed in the position of Assistant Finance Director, although unqualified for the position, received the perks of the position for a month, and now wants to be reclassified in order to maintain these benefits.[5] The court will not endorse that position.

This case presents a compelling reason why government officials must remain free from the restraints generally imposed upon them when they make firing decisions that concern certain important, political positions. To allow a predecessor, on the eve of defeat, to disguise one of his or her cronies by cloaking that person in a position with greater monetary benefits which still appears secure from termination, but which also provides that person with an important administrative title, without that person simultaneously performing any function useful or appropriate for that title, would frustrate the mechanics of government. A newly elected official should not be restrained from assembling "a team of officials whom he trusts to develop and carry out his agenda for the municipality." *Heck,* 985 F.2d at 307. Because the "democratic will of the electorate" often desires to "sweep an administration out of office," the rule of law protecting this democratic principle is essential to prevent "one municipal administration ... [from making] appointments that would bind its successor." *Id.* Regardless of the actual duties Tom assumed under O'Grady's administration, Sheahan is entitled to oust Tom from occupying the position of Assistant Finance Director in order to fill it with political considerations in mind.

It may be unfortunate that a well-paid public servant is dismissed who remained in service to the city for a long period of time and who "rose to a high rank only to discover that achieving that rank leaves [her] unprotected from patronage dismissals." *See Tomczak,* 765 F.2d at 643. But with Tom sitting in the position of Assistant Finance

---

**5.** The court notes that, although Tom still maintains she was an Administrative Assistant III at the time of her firing, it remains uncontested that she could not be classified at Grade 18 and still continue holding the Administrative Assistant III position. Tom does not inform the court where Sheahan could have reclassified her in the first instance.

Director, Sheahan cannot fill it with someone loyal to him. Moreover, Tom's subjective belief does not create a protected interest in the position of her choosing. Tom cannot now benefit from the previous administration's gerrymandering at the expense of the new administration.

## CONCLUSION

For the aforementioned reasons, defendants' motion is granted.

IT IS SO ORDERED.