**Janice C. NUNNERY, an individual, Plaintiff,**

v.

**J. Richard BARBER, as an individual and in his official capacity as the West Virginia Alcohol Beverage Control Commissioner, Defendant.**

**Civ. A. No. 73–223 CH.**

United States District Court, S. D. West Virginia, Charleston Division.

Oct. 30, 1973.

---

18. Judge Spaeth is now a member of the Pennsylvania Superior Court.

■■■■■■■■■■

John L. Boettner, Jr., Charleston, W. Va., for plaintiff.

William R. Wooten, Asst. Atty. Gen., Charleston, W. Va., for defendant.

## MEMORANDUM ORDER

K. K. HALL, District Judge.

This civil rights action involves political patronage in personnel employment at the state level in West Virginia.

From about December 1, 1972, until December 5, 1972, plaintiff, Janice C. Nunnery, was employed by the State of West Virginia as the manager of its liquor store No. 590 in Madison, Boone County, West Virginia. She complains that on December 5, 1972, she was summarily discharged from that position and states that the discharge was the direct result of a request by the Boone County Chairman of the Republican party to the defendant, the appointed head of the Alcohol Beverage Control Commission of West Virginia, to provide a job vacancy that could be filled by a political patronage appointment. Plaintiff complained of the discharge to the Governor of West Virginia and was subsequently reinstated in the job on December 15, 1972. On July 12, 1973, she was again summarily discharged allegedly for the same reason. It should be noted that plaintiff is also a member of the Republican party, but complains that she was discharged to provide employment for a more active member of the party. Plaintiff's factual allegations are essentially uncontested. It is also uncontested that, under 'West Virginia law, the position of liquor store manager is specifically excluded from civil service coverage.[1]

Under provisions of 28 U.S.C. § 1343, and 42 U.S.C. § 1983, plaintiff brought this action to obtain reinstatement with back pay, for an injunction restraining defendant from discharging plaintiff in the future for purely partisan political reasons in furtherance of the "spoils system," and for recovery of compensatory and punitive damages.[2] In support of her claim, she asserts that the discharge constitutes a violation of her first, fifth, and fourteenth amendment rights. More specifically, she complains that she was denied an opportunity to be heard on the matter, that her expectancy and opportunities for pursuing government employment have been impaired, and that her right to freedom of political association has been abridged. It is upon defendant's motion to dismiss that this cause is pending.

The principal issue thus presented is whether a non-policy-making public state employee may be discharged to provide a job vacancy to be filled by a patronage appointment. For the reasons hereinafter developed, this Court concludes that the discharge was lawful, and that defendant's motion to dismiss

---

1. W.Va.Code, Ch. 29, Art. 6, § 2 (Michie Repl.Vol.1971), dealing with the West Virginia Civil Service System, provides, in pertinent part:

"The governor may, by executive order, with the written consent of the civil service commission and the appointing authority concerned, add to the list of positions in the classified service, but such additions shall not include the following:

"(11) Managers and clerks of liquor stores."

W.Va.Code, Ch. 60, Art. 2, § 12 (Michie 1966), deals with the Alcohol Beverage Control Commissioner and provides:

"The commission shall appoint or employ such assistants and employees as may be necessary to the efficient operation of the department and fix their salaries. All assistants and employees shall be appointed or employed to serve during the will and pleasure of the commission."

2. Defendant has moved the Court to dismiss the action because of an asserted lack of jurisdiction based on the immunity provisions of the eleventh amendment to the Constitution and W.Va. Constitution, Art. VI, § 35. Inasmuch as the Court is disposing of the case on the merits of the constitutional claim asserted, it is unnecessary to decide the immunity issue. See gen., Kondos v. West Virginia Board of Regents, 318 F. Supp. 394 (S.D.W.Va.1970); Kirker v. Moore, 308 F.Supp. 615 (S.D.W.Va.1970), aff'd, 436 F.2d 423 (4th Cir. 1971).

for failure to state a claim should be granted.

The instant case is not the first time this Court has entertained litigation involving summarily dismissed employees of the State of West Virginia. In Kirker v. Moore, 308 F.Supp. 615 (S.D.W. Va.1970), an alleged strike by State Road Commission employees prompted Governor Arch A. Moore, Jr., to summarily discharge over 3,000 of such employees. Although they were not covered by Civil Service, the employees complained, among other things, that the discharges were unconstitutional in that they were for "the purpose of effectuating the 'spoils system' of political patronage in West Virginia. . . ." Kirker v. Moore, *supra,* at 617. Concluding that the complaint failed to state a claim, this Court noted at pages 623–624 of its opinion:

> No function is more completely internal to a branch of government than the selection and retention or dismissal of its employees. * * *

> In the absence of statute or ancient custom to the contrary, executive offices are held at the will of the appointing authority, not for life or for fixed terms.

The holding of this Court was affirmed by the United States Court of Appeals, Fourth Circuit, in Kirker v. Moore, 436 F.2d 423 (4th Cir. 1971). The Appeals Court stated in its per curiam opinion: "For the reasons stated by the district court, we are pursuaded that the defendants were entitled to discharge the plaintiffs for any reason other than for their exercise of constitutionally protected rights. . . ."

Plaintiff, of course, contends in the present case that her discharge was for exercising a constitutionally protected right. Not only does Kirker v. Moore, *supra,* indicate otherwise, but the weight of authority among other jurisdictions militates against her asserted conclusion. Plaintiff relies chiefly on Illinois State Employees Union, Council 34 v. Lewis, 473 F.2d 561 (7th Cir. 1973) cert. denied, 410 U.S. 928, 93 S.Ct. 1364, 1370, 35 L.Ed.2d 590 (1973). Plaintiffs in *Lewis,* former employees in the office of the Secretary of State of Illinois, were allegedly terminated because they refused to support the Republican party. The district court had granted defendant's motion for summary judgment. The three-judge panel held that the summary discharge of non-policy-making public employees because of political association was an abridgement of their constitutional rights and reversed and remanded the action for factual development of defendant's true motives. Concurring and dissenting opinions were also filed.[3]

The *Lewis* decision stands greatly alone, however, in its conclusion that a discharge from public employment in

---

3. The author of the majority opinion was Judge Stevens of the seventh circuit. Judge Campbell, district judge from the Northern District of Illinois who was sitting by designation, filed a concurring opinion in which he expressed considerable concern about the consequences of the decision, but felt that the majority's result was compelled by Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Judge Kiley of the seventh circuit dissented arguing that Bailey v. Richardson, 86 U.S.App.D.C. 248, 182 F.2d 46 (1950), which represents the traditional view of the first amendment problem, had not been undermined by the Supreme Court's footnote reference in Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Footnote 9 in the *Roth* opinion states:

> In a leading case decided many years ago, the Court of Appeals for the District of Columbia Circuit held that public employment in general was a 'privilege,' not a 'right,' and that procedural due process guarantees therefore were inapplicable. Bailey v. Richardson, 182 F.2d 46, aff'd by an equally divided Court, 341 U.S. 918, 71 S.Ct. 669, 95 L.Ed. 1352. The basis of this holding has been thoroughly undermined in the ensuing years. For, as Mr. Justice Blackmun wrote for the Court only last year, "this Court now has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a 'right' or as a 'privilege.'" (Citations omitted).

Judge Kiley suggests that the footnote reference in *Roth* is to the procedural due process holding in *Bailey* and not to the first amendment determination. This Court is inclined to agree with Judge Kiley's interpretation.

furtherance of the "spoils system" constitutes an abridgement of constitutional rights. Typical of the opposing view is Alomar v. Dwyer, 447 F.2d 482 (2d Cir. 1971), cert. denied, 404 U.S. 1020, 92 S. Ct. 683, 30 L.Ed.2d 667 (1972). In *Alomar* the question presented to the court was essentially the same as that confronted by the seventh circuit in *Lewis*. Nevertheless, the court determined that the particular discharge was proper and that a contrary holding would amount to an unjustified encroachment upon the legislative and executive domains.[4] Quoting from Bailey v. Richardson, 86 U.S.App.D.C. 248, 182 F.2d 46, 59 (1950), the court states at page 483:

> It is next said that the appellant's dismissal impinged upon the rights of free speech and assembly protected by the First Amendment, since the dismissal was premised upon alleged political activity. * * * But the plain hard fact is that so far as the Constitution is concerned there is no prohibition against the dismissal of Government employees because of their political beliefs, activities or affiliations.

The court continues at 483–484:

> It is well understood that the victors will reap the harvest of those public positions still exempt from [Civil Service] laws. Indeed many such positions are exempt because a new administration taking office can only carry out its policies by replacing certain officeholders. If and when additional exempt positions are to be subject to civil service protection is a matter for action by the appropriate municipal and state authorities and not by a federal court.

*Accord,* Norton v. Blaylock, 409 F.2d 772 (8th Cir. 1969); Indiana State Employees Assoc., Inc. v. Negley, 357 F.

Supp. 38 (S.D.Ind.1973); American Fed'n of State, County, and Municipal Employees, AFL–CIO v. Shapp, 443 Pa. 527, 280 A.2d 375 (1971); *Cf.* Young v. Coder, 346 F.Supp. 165 (M.D.Pa.1972); Moldawsky v. Lindsay, 341 F.Supp. 1393 (S.D.N.Y.1972); Kirker v. Moore, *supra*; Guine v. Civil Service Commission of West Virginia, 149 W.Va. 461, 467, 141 S.E.2d 364, 368 (1965).

Plaintiff contends, however, that the above cited cases were rendered inapposite by the Supreme Court's decision in Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). In *Sindermann* a non-tenured state college teacher claimed that his employment was terminated because of statements he made critical of the college's board of regents. The Court held that a discharge for that reason to be an unjustified abridgement of the teacher's first amendment rights. Although factually distinguishable from the present case, plaintiff argues that certain language in *Sindermann* suggests an expansion of the constitution's penumbra of protection. In support of this proposition she directs the Court's attention to the following statement in *Sindermann*:

> For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to 'produce a result which [it] could not command directly.' Speiser v. Randall, 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460. Such interference with constitutional rights is impermissible. (408 U.S. at 597, 92 S.Ct. at 2697).

Nevertheless, this Court is of the opinion that nothing in *Sindermann* compels a result contrary to the line of cases

---

4. It has been argued that "a narrowly drawn judicial remedy . . . would not amount to an invasion of the legislative province because such an approach would partake more of the substance of a modified spoils system than legislative civil service." Note, A Constitutional Analysis of the Spoils System—The Judiciary Visits Patronage Place, 57 Iowa L.Rev. 1320, 1352 (1971–72). For an analysis of the issue in light of the *Lewis* decision, see Comment, Political Patronage and Unconstitutional Conditions: A Last Hurrah for the Party Faithful, 14 William and Mary L.Rev. 720 (1973).

 

holding in accord with the second circuit's decision in Alomar v. Dwyer, *supra*. As the court noted in Harnett v. Ulett, 466 F.2d 113 (8th Cir. 1972),

> *Roth* [Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 564, 33 L.Ed.2d 548 (1972)] and *Sindermann* adhere to the principle that absent contractual, legislative or constitutional provision on the subject, the power of removal is incident to the power of appointment, and government employment can be revoked at the will of the appointing officer. Matter of Hennen, 38 U.S. (13 Pet.) 225, 229, 10 L. Ed. 138 (1839). See Freeman v. Gould Special School District of Lincoln County, Arkansas, 405 F.2d 1153, 1159 (CA8 1969).

It should also be noted that at least one federal district court has sustained a "spoils system" dismissal subsequent to *Sindermann*. Indiana State Employees Assoc., Inc. v. Negley, *supra*.

*Roth* does, however, foreclose plaintiff's procedural due process claim to prompt notice and a hearing. *See* Board of Regents v. Roth, *supra*, 408 U.S. at 577, 92 S.Ct. 2701. But plaintiff attempts to bring herself within the scope of procedural due process protection by alleging that her discharge has "permanently damaged her professional character and reputation as well as her personal character and reputation," and that she lost a job expectancy. *See* Board of Regents v. Roth, *supra*; Cafeteria & Restaurant Workers Union Local 473 v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); Illinois State Employees Union, Council 34 v. Lewis, *supra*, at n. 1; Alomar v. Dwyer, *supra*; Indiana State Employees Assoc., Inc. v. Negley, *supra*, at n. 6. The cited authority indicates that the loss of a patronage job would not sufficiently damage an employee's reputation to state a cause of action. *See e. g.* Illinois State Employees Union, Council 34 v. Lewis, *supra*, at n. 1; Indiana State Employees Assoc., Inc. v. Negley, *supra*, at n. 6; Kirker v. Moore, *supra*. Nevertheless, plaintiff did not offer proof of any damage to her reputation or loss of job expectancy, and the Court concludes that she was not entitled to notice or a hearing on the matter of her discharge.

Regardless of any views that may be entertained concerning the advantages and disadvantages of the political patronage system, the Court is constrained to defer decisions modifying or curtailing the system since policy changes therein are more appropriate for the legislative and executive branches of the government. Although a waiver of an asserted constitutional right should not be readily inferred, "(t)hose who, figuratively speaking, live by the political sword must be prepared to die by the political sword." American Fed'n of State, County, and Municipal Employees, AFL–CIO v. Shapp, *supra*, at 280 A.2d 378. Accordingly, after thorough review of the record in this case, it is

Adjudged and ordered that defendant's motion to dismiss plaintiff's complaint be, and it is hereby, granted. The action will be concluded and dismissed from the Court's docket.