Elizabeth **SMETANKA** et al., Plaintiffs,

v.

**BOROUGH OF AMBRIDGE, PENNSYLVANIA** et al., Defendants.

Civ. A. No. 73-518.

United States District Court, W. D. Pennsylvania.

May 7, 1974.

On Motion to Alter or Amend Judgment July 9, 1974.

Daniel M. Berger, Berger & Kapetan, Pittsburgh, Pa., for plaintiffs.

Edward A. Mihalik, Aliquippa, Pa., Genevieve W. Settino, Ambridge, Pa., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER OF COURT

MARSH, Chief Judge.

In this action a preliminary injunction was granted on November 28, 1973, in favor of the plaintiff, Elizabeth Smetanka, restraining the defendant Councilmen from refusing to permit her to speak during the citizens' portion of Council meetings open to the public. The defendants have complied with the preliminary injunction. The action of Alice Ciberey and Concetta M. Fosnaught, plaintiffs, for preliminary injunction and damages was denied pend-

ing final hearing. The final hearing was held in March, 1974. The evidence received at the hearing for preliminary injunction was made part of the record, Rule 65(a)(2) F.R.Civ.P., and additional testimony was taken on behalf of all plaintiffs and the defendants at the final hearing.[1] The court makes the following:

## FINDINGS OF FACT

1. Plaintiffs, Elizabeth Smetanka, Alice Ciberey and Concetta M. Fosnaught, are citizens of the Commonwealth of Pennsylvania, residing in the Borough of Ambridge, Pennsylvania. The defendant, Borough of Ambridge, is a municipal corporation chartered pursuant to the laws of the Commonwealth of Pennsylvania, and located in Beaver County, Pennsylvania. The defendants, Roy E. Stubbins, Andrew Krol, Al Roginski, Frank Sangermano, and William Towcimak, are elected members of the Borough of Ambridge Council; the defendant, Stubbins, has served as President of Council since January of 1972.

## THE SMETANKA ACTION

2. At all relevant times, the five individual defendants comprised the majority of the seven-member Ambridge Council. They belong to a faction of the Borough's Democratic Party, which may be called the "Stubbins group." Mrs. Smetanka and the two remaining Councilmen, Edward Iorfido and George A. Modrovich, belong to a faction of the Borough's Democratic Party, known as the "Panek-Dunn" faction.

3. The Council conducts regular monthly meetings. These meetings are open to the public, and a portion of each meeting is set aside for citizens to speak to Council. This period is known as the "citizens' portion" of the Council meetings. Any resident of the Borough desiring to speak during the citizens' portion of a meeting may obtain the floor by raising his hand and being recognized by the President.

4. No format or rules or regulations governing the conduct or specifying permissible topics for discussion during the citizens' portion were ever adopted by Council.

5. Prior to the meeting held on October 9, 1972, no citizen who raised his hand had been denied the opportunity to speak during the citizens' portion of the meeting.

6. The plaintiff, Elizabeth Smetanka, has attended every regular meeting of the Council from November, 1971, to the time of trial. She spoke at every meeting since November, 1971, to the meeting of October 9, 1972. She talked on varied sensitive subjects pertaining to the Borough and some of its employees; her remarks were usually critical of Council's actions or inactions. Borough Secretary, Joseph Rodio, and Miss Carole Sudia, a Borough employee, disclosed tax record books to Mrs. Smetanka. At the April, 1972, meeting, and thereafter, she criticized the failure of the Borough to collect delinquent occupation-mercantile taxes; she stated that a member of Council was among the delinquent taxpayers; Councilman Stubbins acknowledged his delinquency, although the delinquent tax had been assessed against Stubby's Tavern, owned by Stubbins' father and mother. Stubbins was the manager-bartender of Stubby's Tavern. Because of her complaints, letters were sent to delinquent taxpayers resulting in collection of $1,000 during May and June, 1972.

7. In July, 1972, collection of the occupation-mercantile tax was turned over to the Ambridge Area School District by merger with the Borough. The taxes collected were divided between the Borough and the School District. Andrew J. Bergman, an employee of the School District, was in charge of the collection of these delinquent taxes. Miss Sudia had been assigned to work for the School District in Bergman's office. Mrs. Smetanka paid a visit to this office to further inquire about tax delinquents. Mr. Bergman directed Miss Sudia to

1. None of the parties ordered a transcript of the testimony taken at the final hearing.

show Mrs. Smetanka copies of letters which had been sent to delinquent occupation-mercantile taxpayers. Mr. Bergman did not personally show her these letters or any tax record books. Miss Sudia told Mrs. Smetanka that the taxes assessed against Stubby's Tavern had not been paid by Councilman Stubbins.

8. At the citizens' portion of the September, 1972, Council meeting, Mrs. Smetanka told Council that Mr. Bergman had shown her letters sent to delinquent taxpayers and inquired of Councilman Stubbins whether he was going to pay the tax or ignore the letter. Stubbins told her, "Don't worry about it."

At the citizens' portion of the October, 1972, Council meeting, Councilman Stubbins stated that Mrs. Smetanka had told Council a "bold face lie" when she said, at the September meeting, that Mr. Bergman had shown her tax record books and Stubbins demanded that she apologize to Mr. Bergman. Mrs. Smetanka replied that Mr. Bergman only showed her letters, not books, and refused to apologize. The minutes of the September meeting reflect that Mrs. Smetanka stated that Bergman "showed her letters that he sent out [to delinquent taxpayers] to make payment by September the first on [sic] it will be referred to the Justice of the Peace." Mrs. Smetanka did not lie at the September meeting; at worst, her statement was slightly incorrect, given erringly but not wilfully, on an immaterial point, i. e., whether Bergman showed her the letters or authorized Miss Sudia to show them to her, which is the equivalent. Nevertheless, Councilman Stubbins' reaction, as reflected by the minutes of the October 9th meeting, was as follows:

"The Chair stated that it is quite apparent that Mrs. Smetanka is using this portion of the meeting to harass the members of Council and embarass [sic] employees and has stated a bold face lie against Mr. Bergman. It is apparent that Mrs. Smetanka is conspiring with Mr. Iorfido and he recommended to revoke the privilege from Mrs. Smetanka and under citizens [sic] Council will herefroth [sic] no longer recognize Mrs. Smetanka."

Thereafter, the following action was taken by the defendant Councilmen:

"After further discussion Mr. Sangermano moved, seconded by Mr. Roginski, to accept the recommendation of the Chair that Council overlook and not recognize Mrs. Smetanka in the citizens portion of the meeting. The motion was passed." [2]

9. Mrs. Smetanka never disrupted a Council meeting; she always conducted herself in a ladylike manner and never posed a threat to the orderly conduct of Council's business. However, her critical and pointed remarks had become increasingly annoying, embarrassing, and irritating to Councilman Stubbins and the other defendants who interpreted them as harassment.

10. From October, 1972, until this court issued the preliminary injunction on November 28, 1973, Mrs. Smetanka attended all meetings of the Borough of Ambridge Council and attempted unsuccessfully to be recognized during the citizens' portion of such meetings. President Stubbins refused to recognize Mrs. Smetanka during the citizens' portions, but did recognize all others who wished to speak. Mrs. Smetanka desires to continue to attend and speak at Council meetings open to the public.

11. None of the defendants are lawyers. They did not act in bad faith, wilfully, wantonly, or maliciously at the October 9th meeting, or thereafter, in imposing prior restraint upon the exercise of Mrs. Smetanka's right of freedom of speech and expression. Before and after this meeting, the Borough Solicitor, upon request, advised the defendants that speaking during the citizens' portion of Council meeting was a privilege and not a right, and that this privilege could be revoked if abused. Since October 9th, with regard to the Smetanka ban, the defendants continued to adhere to their solicitor's advice despite a pro-

2. PX 2, Minutes of Regular Meeting of October 9, 1972.

test letter dated January 15, 1973 (PX 5), addressed to the solicitor by the Executive Director of the Pittsburgh Chapter of the American Civil Liberties Union of Pennsylvania, which letter was read at a subsequent Council meeting, and which asked Council to re-examine its position before "further action needs to be taken." The defendant Councilmen reasonably believed in good faith that Mrs. Smetanka had abused the privilege of speaking by harassing Council and the defendant members for political reasons, and that they could revoke her privilege to speak during the citizens' portion of Council meetings. The action of the defendant Councilmen was not taken with subjective intent to disregard the rights and privileges of Mrs. Smetanka under the United States Constitution.

12. In January, 1973, Mrs. Smetanka agreed to be a candidate for Borough Council and run on the Panek-Dunn ticket in the Democratic primary election. She filed a petition to be included on the ballot in February or March of 1973. Incumbent Councilmen Stubbins, Krol, Towcimak, and Iorfido were also candidates for re-election.

13. Following the meeting of October 9th, the action of Council was broadcast over the local radio, published in the newspaper, and otherwise was widespread among the citizens of Ambridge. As a result Mrs. Smetanka suffered a certain amount of ridicule, embarrassment and humiliation; she experienced some insomnia and nervousness, but no medical attention was required. Some citizens made slurs and derogatory remarks to her face and in her presence and to some extent continue to do so. Notwithstanding, in the Spring of 1973 as a candidate for Council on the Panek-Dunn ticket, Mrs. Smetanka waged a vigorous door-to-door campaign thus voluntarily exposing herself to the criticism, ridicule, embarrassment, humiliation and hurt feelings of which she complains. Prior to the meeting of October 9th, she was comparatively unknown, and it seems obvious that the notoriety attributed to the defendants' action of October 9th served to enhance her political efforts for she lost the nomination by only 21 votes. In the 1973 general election, she vigorously conducted an unsuccessful sticker campaign. These voluntary exposures to the public tend to negate the weight of her testimony both as to the extent and value of the damages she may have sustained because of the defendants' action.

14. In my judgment the damages she sustained—nominal, compensatory, and punitive—do not exceed the sum of $10,000.

### THE METER MAIDS' ACTION

15. The plaintiffs, Alice Ciberey and Concetta M. Fosnaught, were employed as meter maids by the Borough Council; Mrs. Ciberey was employed on December 4, 1967, and Mrs. Fosnaught on August 14, 1966 (DX A). There was no evidence that either had been employed for political reasons. They do not hold civil service positions, and they are not policy-making employees.

16. Both of these plaintiffs supported Mrs. Smetanka and other Panek-Dunn candidates prior to the primary election held May 15, 1973. Mrs. Fosnaught supported the Panek-Dunn slate by talking to people she met on the street, and Mrs. Ciberey supported the slate by talking to her very close friends. Mrs. Ciberey's 22 year old daughter, Nanette Winkler, actively supported the Panek-Dunn slate by going to rallies, working at the polls, and by writing a letter (PX 1) ridiculing Councilman Stubbins and the other defendants, which letter was read at a rally for the Panek-Dunn candidates on May 1, 1973. None of the defendants read this letter, but Councilman Stubbins had heard about it. The incumbent Councilmen were nominated on May 15, 1973.

17. After the election, on the morning of May 16, 1973, Councilman Stubbins went to the Ambridge Chief of Police, George Kyragyros, and ordered him forthwith to discharge Mrs. Ciberey and Mrs. Fosnaught. The Chief of Police

complied with Councilman Stubbins' order. Because of "Nationality Days" there was no work for metermaids on May 17, 18, and 19.[3]

18. At the May 21, 1973 meeting of Council, Mrs. Ciberey and Mrs. Fosnaught were formally dismissed by the five defendant Councilmen. Councilmen Iorfido and Modrovich voted against their dismissal. President Stubbins stated that he ordered the Chief of Police to dismiss the meter maids on May 16th on the recommendation of the Chairman of the Public Safety Committee, Councilman Roginski. He further stated that the meter maids "did not conform to the updating of the Police Department."[4] No explanation of the meaning of that statement was satisfactorily given by President Stubbins or the other defendants. The defendants hired as meter maids Leonore Zuk on May 29, 1973, and Kathy Sittig on June 15, 1973. Mrs. Zuk supported and worked for the Stubbins group prior to the primary election.

19. Prior to May 16, 1973, frequent complaints concerning the manner in which the plaintiff meter maids were performing their jobs had come to the attention of the defendant Councilmen. The major and most frequent complaint was that the meter maids would ticket some automobiles violating parking restrictions but would not ticket other automobiles also in violation. Also, Councilman Roginski, the Chairman of the Public Safety Committee, and Councilmen Sangermano and Stubbins had personally observed that the meter maids were usually 15 to 30 minutes late in leaving the police station to start their rounds,[5] and that they did not perform their work properly.[6] Chairman Roginski wanted to fire them the latter part of 1972,[7] but was persuaded not to do this by other Councilmen.[8]

20. The defendants discharged Mrs. Fosnaught and Mrs. Ciberey on May 21, 1973, because of repeated complaints made to them by citizens and because their work as meter maids had not been efficiently performed. The defendant Councilmen were aware that Mrs. Fosnaught and Mrs. Ciberey favored the nomination of the Panek-Dunn slate, and from all of the circumstances, there is a strong inference that their dismissal, in part, was politically motivated. Their dismissals were delayed until after the election for political reasons. I find that they were not dismissed solely for political reasons.

21. A comparison of the work performance of the newly-appointed meter maids with the work performance of the plaintiffs, Ciberey and Fosnaught, discloses that the former in June, July, and August, 1973, were substantially more efficient in issuing tickets on illegally parked cars than were Ciberey and Fosnaught in June, July, and August, 1972. See DX A; also Tr. Page 297.

## DISCUSSION

 Pennsylvania has granted legislative powers to Borough Councils. The Pennsylvania Borough Code, 53 Purdon's' Pa.Stat.Ann. § 46001 et seq. provides at § 46006 as follows:

"It shall be the duty of the borough council:

" * * *

"(3) *To enact*, revise, repeal and amend such bylaws, rules, *regulations*, ordinances and *resolutions*, not inconsistent with the laws of the Commonwealth, as it shall deem beneficial to the borough and to provide for the en-

---

3. PX 3, Joint Committee Meeting, March 28, 1973, Page 2; Tr. pp. 215–216.

4. PX 3, Minutes of Regular Meeting of May 21, 1973.

5. Sangermano, Tr. p. 250, Roginski, Tr. p. 263, Stubbins, Tr. p. 215.

6. Roginski, Tr. pp. 263, 268, and 269, Towcimak, Tr. pp. 270–272, Krol, Tr. pp. 290–291, Stubbins, Tr. pp. 213–215, 227.

7. Roginski, Tr. pp. 263–265, 268, PX 3— Minutes of Regular Meeting, June 11, 1973, p. 3.

8. Roginski, Tr. pp. 263–265, Stubbins, p. 227.

forcement of the same." (Emphasis supplied.)

Thus, Council may exercise its power to enact regulations governing public Council meetings by joint action, usually by resolution adopted by a majority vote of the members. Commonwealth ex rel. Fox v. Chace, 403 Pa. 117, 168 A.2d 569 (1961).

The resolution enacted by the Ambridge Council within its province denying Mrs. Smetanka the right to speak during the citizens' portion of Council meetings is an authoritative prescript derived from the law of Pennsylvania.[9] In the exercise of their legislative power, if not entitled to the defense of absolute immunity,[10] the defendant Councilmen at least have a qualified immunity from damage suits under § 1983 when it is found, as here, they acted in good faith. Cobb v. City of Malden, 202 F.2d 701 (1st Cir. 1953), concurring opinion pp. 705–707, citing Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951).

It seems clear from the *Tenney* decision that no matter what motive prompted individual legislators to act within their province, they were not answerable in damages under the Civil Rights Act (p. 378). In the case *sub judice,* although the defendant Councilmen enacted an unconstitutional resolution, since they acted in good faith in reliance upon the advice of their solicitor, they are at least entitled to the defense of qualified immunity and are not liable in damages or for counsel fees. Nelson v. Knox, 256 F.2d 312 (6th Cir. 1958); Young v. Coder, 346 F.Supp. 165 (M.D.Pa.1972); Safeguard Mutual Insurance Company v. Miller, 333 F.Supp. 822 (E.D.Pa.1971); Shellburne, Inc. v. New Castle County, 293 F.Supp. 237 (D. Del.1968). Moreover, Mrs. Smetanka did not establish by a preponderance of the evidence that the defendants subjectively realized that their action would deprive her of rights and privileges secured by the Constitution of the United States. Cobb v. City of Malden, *supra,* 202 F.2d p. 707.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of these actions against the individual defendant Councilmen by virtue of the Civil Rights Act, 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343(3) and (4).

2. The Borough of Ambridge is not a person within the meaning of 42 U.S.C. § 1983 with regard to liability for money damages or for injunctive or declaratory relief. City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). Howell v. Cataldi, 464 F.2d 272, 277 (3d Cir. 1972).

3. The claims of the plaintiffs were properly joined pursuant to Rule 20(a), Fed.R.Civ.P.

4. At all times relevant, the defendant Councilmen acted under color of state law.

## THE SMETANKA ACTION

5. Since Mrs. Smetanka's damages—nominal, compensatory, and punitive—were not proved to be in excess of $10,000, the court does not have jurisdiction over the Borough of Ambridge by virtue of 28 U.S.C. § 1331. Sedivy v. Richardson, 485 F.2d 1115 (3d Cir. 1973); Spock v. David, 469 F.2d 1047, 1052 (3d Cir. 1972).

6. By their action in denying the plaintiff, Elizabeth Smetanka, recognition during the citizens' portion of Ambridge Borough Council meetings, at which all other Borough citizens had been recognized and permitted to speak without restriction, the individual defendant Councilmen have imposed prior restraint upon the exercise of Mrs. Smetanka's rights of freedom of speech and

9. Cf. Roberts Rules of Order 67.

10. In Shellburne, Inc. v. New Castle County, the comprehensive opinion of Judge Steel accords absolute immunity from personal liability to members of a County Council.

expression in violation of the First and Fourteenth Amendments to the Constitution of the United States and of the Civil Rights Act. See: New York Times Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971); Carroll v. Princess Anne, 393 U.S. 175, 181, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968); Freedman v. Maryland, 380 U.S. 51, 57, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); Cf. Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L. Ed.2d 222 (1972).

■ 7. Annoyance, irritation or embarrassment felt by the defendant Councilmen, elected public officials, which resulted from the exercise of Mrs. Smetanka's right of free speech during the citizens' portion of Council meetings (exercised by her without disruption of the meetings and without uttering any wilful falsehood) are not adequate grounds for imposition of prior restraint on the public expression of criticism of the defendant Councilmen, individually or collectively. Cf. New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931).

■ 8. The citizens' portion of the Ambridge Borough Council meetings has been and continues to be available to all other residents of the Borough for purposes of raising issues of concern to the Borough and its citizens, without the adoption of any express or specific regulations or restrictions as to the format of the citizens' portions of said meetings, or as to the permissible topics of discussion; therefore, the silencing of Mrs. Smetanka was unreasonable and in violation of the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States. Cf. Police Department of Chicago v. Mosley, 408 U.S. 92, 92 S. Ct. 2286, 33 L.Ed.2d 212 (1972); Bonner-Lyons v. School Committee of City of Boston, 480 F.2d 442 (1st Cir. 1973).

■ 9. The plaintiff, Smetanka, has no adequate remedy at law for the deprivation of her Constitutional rights and will suffer irreparable harm if the defendant Councilmen are not permanently enjoined from denying her the right to speak during the citizens' portion of future Borough of Ambridge Council meetings.

10. Since the defendant Councilmen reasonably believed in good faith that they could prevent Mrs. Smetanka from speaking during the citizens' portion of Council meetings, they are immune from personal liability under the Civil Rights Act, 42 U.S.C. § 1983, and are not liable in damages to the plaintiff, Elizabeth Smetanka, nor are they liable for counsel fees.

### THE METER MAIDS' ACTION

■ 11. The defendant Councilmen, the majority elected representatives of the Borough, a public employer, having the statutory right to hire and fire public employees, may summarily dismiss non-civil service and non-professional employees, such as the plaintiffs, Alice Ciberey and Concetta M. Fosnaught, for failure to properly perform their duties as meter maids. Cf. Board of Regents v. Roth, 408 U.S. 564, 92 S. Ct. 2701, 33 L.Ed.2d 548 (1972); Cafeteria Workers v. McElroy, 367 U.S. 886, 896–897, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). The probability that they were also dismissed for political reasons, but not solely therefor, does not require a contrary conclusion. Illinois State Employees Union, Council 34, Etc. v. Lewis, 473 F.2d 561 (7th Cir. 1972), cert. denied, 410 U.S. 943, 93 S.Ct. 1370, 35 L. Ed.2d 609 (1973), see concurring opinion, 473 F.2d at p. 579; Alomar v. Dwyer, 447 F.2d 482 (2d Cir. 1971); American Federation of State, C. & M. Emp. v. Shapp, 443 Pa. 527, 280 A.2d 375 (1971); Young v. Coder, 346 F. Supp. 165 (M.D.Pa.1972).

■ 12. No person has a Constitutional right to Borough employment. The Fourteenth Amendment does not provide job security for public employees. Loss of particular position of

government employment is not *ipso jure* the loss of life, liberty or property within the protection of the Fourteenth Amendment. *Cf.* Board of Regents v. Roth, *supra.*

13. Plaintiffs, Alice Ciberey and Concetta Fosnaught, failed to prove any violation of their Constitutional rights by a preponderance of the evidence.

14. The Constitutional rights of Alice Ciberey and Concetta M. Fosnaught were not violated by their dismissal as meter maids by the defendant Councilmen. Alomar v. Dwyer, *supra;* American Federation of State, C. & M. Emp. v. Shapp, *supra.*

## ON MOTION TO ALTER OR AMEND JUDGMENT

On May 7, 1974, after final hearing in the above entitled Civil Rights case, this court issued findings of fact, conclusions of law, and an order of court holding that the plaintiffs Ciberey and Fosnaught were not entitled to damages or injunctive relief because they had not established a violation of their constitutional rights, and that the plaintiff Smetanka, while entitled to a permanent injunction restraining the individual defendants from interfering with her right to speak at the citizens' portion of the Borough of Ambridge Council meetings, was not entitled to money damages from the individual defendants because they were immune from suit. In addition, the court found that it did not have jurisdiction over the Borough of Ambridge under § 1331, 28 U.S.C. On May 17, 1974, the plaintiffs filed a timely "Motion to Alter and/or Amend a Judgment" under Rule 59(e), Fed.R. Civ.P., asserting:

"1. The conclusion of law that the court does not have jurisdiction over the Borough of Ambridge by virtue of 28 U.S.C. § 1331 because plaintiffs did not successfully prove damages in excess of $10,000 should be stricken and a finding of subject matter jurisdiction be made.

\* \* \* \* \* \*

"2. This court should alter or amend its determination that good faith is a defense to an award of attorneys' fees.

\* \* \* \* \* \*

"3. The conclusion that plaintiffs Ciberey and Fosnaught did not establish a violation of their constitutional rights entitling them to relief should be altered and relief in the form of reinstatement and damages equivalent to backpay should be awarded against all defendants including the Borough of Ambridge \* \* \*."

After due consideration, we conclude that plaintiffs' motion should be denied in all respects.

## JURISDICTION OVER BOROUGH OF AMBRIDGE

The complaint was filed on June 22, 1972. After defendants' motions to dismiss and sever were denied orally, the hearing on plaintiffs' motion for preliminary injunction began on August 30, 1973. During the hearing, namely on August 31, 1973 (Tr. p. 184), the plaintiffs filed a "Motion to Amend Complaint" alleging that the amount in controversy exceeded $10,000 and that the court had jurisdiction over the defendants by virtue of §§ 1331, 1343(3) and (4) and pendent jurisdiction. The defendants contended that the amount in controversy did not exceed $10,000, and, when the plaintiffs failed to show any pecuniary loss whatsoever at the preliminary hearing, the court found:

" \* \* \* No damages were proved in favor of any plaintiff in excess of $10,000 and, at this time, it cannot be determined if this court has jurisdiction over the Borough of Ambridge by virtue of 28 U.S.C. § 1331. Sedivy v. Richardson, 485 F.2d 1115 (3rd Cir. 1973) ; Spock v. David, 469 F.2d 1047, 1052 (3rd Cir. 1972)."

Subsequently, the defendants filed an answer to the plaintiffs' complaint denying therein that the amount in controversy exceeded $10,000 and, before final hearing, moved for summary

judgment based, in part, on lack of jurisdiction. The defendant's motion for summary judgment was denied and, following Spock v. David, 469 F.2d 1047, 1056 (3rd Cir. 1972) and Sedivy v. Richardson, 485 F.2d 1115, 1116 (3rd Cir. 1973), the plaintiffs were given an opportunity at the final hearing on March 3, 1974, to show that the amount in controversy exceeded $10,000. After this final hearing the court made the following finding:

"5. Since Mrs. Smetanka's damages —nominal, compensatory, and punitive —were not proved to be in excess of $10,000, the court does not have jurisdiction over the Borough of Ambridge by virtue of 28 U.S.C. § 1331. Sedivy v. Richardson, 485 F.2d 1115 (3rd Cir. 1973); Spock v. David, 469 F.2d 1047, 1052 (3rd Cir. 1972)." [1]

The plaintiffs now request that this finding be changed asserting that their allegation of amount in controversy was made in good faith, that it does not appear to a legal certainty that their claim is for less than $10,000, and, in any event, freedom of speech is by definition worth more than $10,000. We disagree with plaintiffs' assertions.

Plaintiffs' reliance on Spock v. David, *supra*, for the proposition that freedom of speech is by definition worth $10,000 is misplaced under the facts of this case. It should be noted that certain plaintiffs in Spock were denied preliminary injunctive relief partially because of doubt that they would be able to meet the jurisdictional amount at final hearing. Spock v. David, *supra*, 469 F.2d at 1056.

Spock was an action against federal officers solely for injunctive relief, and in determining jurisdictional amount the court set forth the following rule 469 F.2d at page 1052:

"Section 1331 refers both to sum and to value. In cases in which there is an adequate remedy at law, the recovery of damages, the jurisdictional amount must be determined by reference to the sum of those damages. In cases where there is no adequate remedy at law, the measure of jurisdiction is the value of the right sought to be protected by injunctive relief."

■ In the present case full and complete equitable relief has been given to plaintiff Smetanka via § 1983, 42 U.S.C., and her sole reason for invoking § 1331 jurisdiction is to bring the Borough of Ambridge into this case as a party so that it may be held liable to her for money damages under the doctrine of respondeat superior.[2] Accordingly, under the Spock case, the jurisdictional amount for purposes of holding the Borough of Ambridge liable for damages must be determined solely by reference to the sum of her damages, and the value of her right test is immaterial because it applies only in cases where jurisdiction is sought for purely equitable relief.

■ The rule for determining the jurisdictional amount of a claim for money damages is set out in the seminal case of St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), at 289, 58 S.Ct. at 590:

"It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent,

1. Since the plaintiffs Ciberey and Fosnaught failed to prove a violation of their constitutional rights, no finding or conclusion was made as to the dollar amount of their claims for purposes of § 1331 jurisdiction.

2. Whether a municipality may be held liable for money damages under the doctrine of respondeat superior for the constitutional torts of its elected officials, who themselves are immune, when jurisdiction is based upon § 1331 is a difficult question of federal common law. See discussion, infra. We believe that it cannot. Cf. Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed. 2d 596 (1973).

to a legal certainty, that the plaintiff cannot recover the amount claimed *or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed."* (Emphasis supplied) (Footnotes omitted)

■■■■■ Where, as here, the allegation of jurisdictional amount is traversed it "calls for substantial proof on the part of the plaintiff of facts justifying the conclusion that the suit involves the necessary sum." See Hague v. C. I. O., 307 U.S. 496, 508–509, 59 S.Ct. 954, 960, 83 L.Ed. 1423 (1939), a suit for infringement of First Amendment rights. Accordingly, the burden was on plaintiff Smetanka at the final hearing to establish by competent and preponderate evidence that her claim exceeded $10,000. David v. Shultz, 453 F.2d 497 (3rd Cir. 1971); Nelson v. Keefer, 451 F.2d 289 (3rd Cir. 1971). This she attempted to do by her testimony that she had suffered embarrassment because of council's actions, becoming generally known in the community as a "big mouth" and "trouble maker", and by testimony that after council's action she suffered some nervousness and sleepless nights. There was no expert medical testimony offered, or even evidence that it was necessary for her to seek any medical advice; to the contrary, it appears she was able to run an effective political campaign for council after her experience, losing only by 21 votes. Viewing this evidence on damages objectively, in a light most favorable to plaintiff Smetanka, and considering the evidence regarding nominal, compensatory, and punitive damages, we still conclude that her jurisdictional claim is colorable, and that

it appears to a legal certainty that the evidence would not sustain a verdict for plaintiff Smetanka for more than $10,000; therefore, this court has no jurisdiction under § 1331.[3]

■■■■ Moreover, assuming arguendo that this court has jurisdiction over plaintiff Smetanka's claim under § 1331, Congress has never created a federal cause of action authorizing the recovery of money damages against a municipality under the doctrine of respondeat superior because of the constitutional torts of its elected officials. Before such relief could be granted it would be necessary to determine if such a cause of action can be implied from § 1331 under the doctrine of Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). A consideration of Bivens convinces us that its extension to include the facts of this case is unwarranted and would be contrary to an express congressional intent that municipalities not be held so liable. Cf. Wheeldin v. Wheeler, 373 U. S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963).

First, the holding in Bivens that an implied cause of action for money damages for violation of constitutional rights arose under the general grant of jurisdiction to the federal courts in § 1331 is clearly limited to actions against individual federal officers.[4] In reaching this result the court was careful to observe that "we have here no explicit congressional declaration that persons injured by a federal officer's violation of the Fourth Amendment may not recover money damages from the agents, but must instead be remitted to another remedy, equally effective in the view of Congress." *Bivens, supra,* 403 U.S. at 397, 91 S.Ct. at 2005. So, in Bivens, where "a federal statute [§ 1331] pro-

3. If, hypothetically, the final hearing had been a jury trial on the issue of damages, and the jury had returned a verdict over $10,000, it would have been ruled grossly excessive. Cf. Nelson v. Keefer, 451 F.2d 289, 295 (3rd Cir. 1971).

4. Bivens did not deal with the question of whether the United States could be held liable under the doctrine of respondeat superior for the actions of federal officers, and we are of the opinion that unless Congress acted in this area by passing a statute waiving sovereign immunity that it could not.

vide[d] for a general right to sue", Id., 403 U.S. at 396, 91 S.Ct. at 2004, and there was "no explicit congressional declaration that persons * * * may not recover money damages", Id., 403 U.S. at 397, 91 S.Ct. at 2005, the court held it was free to *imply* a damage remedy under federal common law against persons, i. e., federal officers, acting under color of federal law.

In the case *sub judice*, while we have the same federal statute [§ 1331] as in Bivens providing a general right to sue, contrary to Bivens we have an affirmative indication from Congress, found in the legislative history of § 1983, 42 U.S. C., that municipalities such as the Borough of Ambridge should not be held vicariously liable for damages for violation of constitutional rights perpetrated by their elected officials or employees under color of state law, see Monroe v. Pape, 365 U.S. 167, 187–192, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) and City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), and we also have a judicial construction of § 1983 that vicarious liability does not exist on the part of a political subdivision, even when the law of the state in which the subdivision is located is to the contrary, see Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). Since § 1331 and § 1343(3), the jurisdictional counterpart of § 1983, are part of the same trend in legislation, Lynch v. Household Finance Corp., 405 U.S. 538, 548, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1973), we find it difficult to believe that in passing § 1331 Congress desired or intended that federal courts should judicially infer the simultaneous creation of a cause of action for money damages against a municipality when Congress itself had specifically considered and refused to legislatively create such liability in passing § 1343(3) and § 1983. Accordingly, even if jurisdiction in this case existed under § 1331, we would be inclined to hold that plaintiff Smetanka has failed to state a cause of action under federal law against the Borough of Ambridge because no federal common law remedy can be implied on the facts of this case under Bivens, and because as a matter of federal common law the Borough is not vicariously liable for the acts of its elected officials and it, along with them, is immune from an award of damages under § 1331 as well as under § 1343(3) and § 1983.[5]

## THE CONSTITUTIONAL RIGHTS OF PLAINTIFFS CIBEREY AND FOSNAUGHT

After the final hearing in this case the court made the following finding of fact regarding the claims of plaintiffs Ciberey and Fosnaught:

"20. The defendants discharged Mrs. Ciberey and Mrs. Fosnaught on May 21, 1973, because of repeated complaints made to them by citizens and because their work as meter maids had not been efficiently performed. The defendant councilmen were aware that Mrs. Ciberey and Mrs. Fosnaught favored the nomination of the Panek-Dunn slate, and from all of the circumstances, there is a strong inference that their dismissal, in part, was politically motivated. Their dismissals were delayed until after the election for political reasons.

5. In a footnote on page 5 of their brief plaintiffs assert that this court "has pendent jurisdiction with respect to the claims against the Borough of Ambridge." Suffice it to say that whatever the law of Pennsylvania is regarding suits against municipalities for money damages for violation of constitutional rights these plaintiffs have not adequately pleaded it, argued it, or otherwise brought it to the attention of the court, until this time, and our own research reveals that several difficult questions of Pennsylvania law are presented if the Borough of Ambridge were held to be a pendent party to this suit. Accordingly, we believe it to be within our discretion to decline pendent jurisdiction. Cf. Moor v. Count of Alameda, 411 U.S. 693, 710–717, 93 S.Ct. 1785, 36 L. Ed.2d 596 (1973).

I find that they were not dismissed solely for political reasons."

and, stated the following conclusion of law:

"11. The defendant councilmen, the majority elected representatives of the Borough, a public employer, having the statutory right to hire and fire public employees, may summarily dismiss non-civil service and non-professional employees, such as the plaintiffs, Alice Ciberey and Concetta M. Fosnaught, for failure to properly perform their duties as meter maids. *Cf.* Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Cafeteria Workers v. McElroy, 367 U.S. 886, 896–897, 81 S. Ct. 1743, 6 L.Ed.2d 1230 (1961). The probability that they were also dismissed for political reasons, but not solely therefor, does not require a contrary conclusion. Illinois State Employees Union, Council 34, Etc. v. Lewis, 473 F.2d 561 (7th Cir. 1972), cert. denied, 410 U.S. 943, 93 S.Ct. 1370, 35 L.Ed.2d 609 (1973), see concurring opinion, 473 F.2d at p. 579; Alomar v. Dwyer, 447 F.2d 482 (2d Cir. 1971); American Federation of State, C. & M. Emp. v. Shapp, 443 Pa. 527, 280 A.2d 375 (1971); Young v. Coder, 346 F.Supp. 165 (M.D.Pa. 1972)."

These plaintiffs, Ciberey and Fosnaught, now argue that because the court found a "strong inference" that their dismissals were "in part" politically motivated they are entitled to relief, citing Skehan v. Board of Trustees of Bloomsburg State College, 501 F.2d 31 (3rd Cir. 1974). We disagree.

The issue of the true motive for the dismissal of these plaintiffs was hotly contested at both the preliminary and final hearings. The defendant councilmen in their sworn testimony unanimously denied any political motivation for the dismissals, on the other hand, the plaintiffs relied on the circumstantial evidence of the proximity of their dismissals to the election. But, any doubts which were entertained on this issue were resolved by the convincing proof submitted by the defendants that Ciberey and Fosnaught were not properly performing their duties, and that an independent basis, apart from any political motive, existed for discharging these plaintiffs.

The Civil Rights Act, 42 U.S.C. § 1983, "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961). Plaintiffs Ciberey and Fosnaught had the burden of proving in this case that a causal connection existed between their political associations and the decision of council to fire them. This burden was not discharged by showing that council had a dual reason for their discharge, or even by raising a strong inference that their dismissals were in part politically motivated, but required proof that but for their political associations and activities they would not have been discharged, i. e., that they were fired solely for political reasons. On this record such a finding would be sheer speculation on the part of the court. We believe the plaintiffs Ciberey and Fosnaught have failed to prove that they are entitled to relief on the grounds that their constitutional rights have been violated.[6]

---

**6.** We note that even if this finding of causation could be made, only one court has indicated that relief would be available under the Civil Rights Act: Illinois State Employees Union, Council 34, Etc. v. Lewis, 473 F.2d 561 (7th Cir. 1972), while the majority have reached a contrary result: Alomar v. Dwyer, 447 F.2d 482 (2d Cir. 1971); American Federation of State, C. & M. Emp. v. Shapp, 443 Pa. 527, 280 A.2d 375 (1971); Young v. Coder, 346 F.Supp. 165 (M.D.Pa. 1972); and Nunnery v. Barber, 365 F.Supp. 691 (S.D.W.Va.1973) in which Judge K. K. Hall sets forth a comprehensive analysis of the problem.

## ATTORNEYS' FEES

The defendants in this case have all been found to be either immune from suit or outside the jurisdiction of this court. We do not know of any precedent authorizing an award of attorneys' fees in such circumstances. Cf. Skehan v. Board of Trustees of Bloomsburg State College, 501 F.2d 31 (3rd Cir. 1974).

An appropriate order denying the plaintiffs' motion will be entered.