**James Edward YOUNG and Joan Young, Individually, as Husband and Wife, and as Administrators of the Estate of Allan Schreffler a/k/a James Edward Young, Plaintiffs,**

v.

**Helen FRANCIS, Kathy Hume, H. Scott Campbell, Dr. Albert Lehmicke, and Children & Youth Services of Delaware County, Defendants.**

**Civ. A. No. 92–7088.**

United States District Court, E.D. Pennsylvania.

Sept. 27, 1993.

Steven H. Rubin, King of Prussia, PA, for plaintiffs.

Bart C. Tuttle, Donna L. Werchoski, O'Brien & Ryan, Plymouth Meeting, PA, for Dr. Albert Lehmicke.

Michael P. Dignazio, Nelson & Dignazio, Media, PA, for all other defendants.

### MEMORANDUM

LOWELL A. REED, Jr., District Judge.

On December 19, 1992, plaintiffs James Edward Young and Joan Young (collectively "plaintiffs") filed claims, on behalf of themselves and as administrators of the Estate of Allan Schreffler a/k/a James Edward Young ("Schreffler" or "the child"), under 42 U.S.C. §§ 1983, 1988, arising out of the death of the child whom they intended to adopt, and alleging violations of Schreffler's and their First, Ninth and Fourteenth Amendment rights, and various state law claims under the laws

of the Commonwealth of Pennsylvania against defendants Helen Francis, Kathy Hume, H. Scott Campbell, Dr. Albert Lehmicke ("Dr. Lehmicke"), and Children and Youth Services of Delaware County ("CYS").

On May 3, 1993, I issued an order granting defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) as to plaintiffs' constitutional claims of interference with the Youngs' own personal liberty interest in a relationship with Schreffler and Schreffler's liberty interest in a relationship with them personally. I denied defendants' motion as to plaintiffs' claim for the deprivation of Schreffler's constitutional rights. Currently before me is defendants' motion for partial summary judgment as to the remaining federal claim (Document No. 14).[1]

The jurisdiction of this Court is founded upon the existence of a federal question pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. Upon consideration of the motion, as well as the pleadings, affidavits and discovery of record, and for the reasons which follow, I will grant defendants' motion for partial summary judgment of the remaining federal claim. Having dismissed all of plaintiffs' federal claims, I will decline to exercise my discretion to retain jurisdiction over their state claims and, thus, will dismiss plaintiffs' state law claims without prejudice.

### I. *BACKGROUND* [2]

Plaintiffs are residents of Drexel Hill, Pennsylvania. In 1989, they filed an application for adoption with CYS through its foster parent and adoption program.[3] The child, Schreffler, was placed into the custody of plaintiffs by CYS on September 27, 1990. The parental rights of Schreffler's biological parents were terminated in December 1990 and January 1991 in Delaware County, Pennsylvania. Plaintiffs filed a report of intention to adopt Schreffler on February 11, 1991.

Defendant Dr. Lehmicke first examined the child July 18, 1990. During that examination, Dr. Lehmicke discovered that a "left-sided weakness" had been identified in Schreffler, and that he should be re-tested. Dr. Lehmicke ordered additional neurological testing of Schreffler. These additional tests were conducted by Dr. Charles B. Brill ("Dr. Brill"), Clinical Professor of Pediatrics and Neurology at Jefferson Medical College in Philadelphia, who issued a report to Dr. Lehmicke on August 9, 1990. Dr. Brill's report states: [4]

> Allan Schraffler [sic] has mild bi-lateral long tract signs, left more marked than the right. In addition, he has a suggestion of a left homonymous hemianopia ... *[and] prospective adopting parents should be told of the neurologic abnormalities and be made aware of the fact that the child's future neuro-developmental prognosis is guarded.*

(emphasis in complaint).

On August 17, 1990, a test known as an EEG was performed on the child at the request of Drs. Brill and Lehmicke. The EEG report stated that the results of this test were "probably normal; however, it is technically limited and should be repeated at no charge to the patient." Dr. Lehmicke did not order a second EEG to be performed. Dr. Lehmicke states that "based on the neurological findings, an EEG and CAT scan were ordered and were interpreted as normal, [and] that, given the child's neurological improvement, there was no indication for other or future neurologic testing at that

---

1. Defendant Dr. Albert Lehmicke filed this motion for summary judgment ("motion") on June 30, 1993. Pursuant to a praecipe filed on July 16, 1993, the remaining defendants, Children and Youth Services of Delaware County, H. Scott Campbell, Kathy Hume, and Helen Francis, joined defendant Dr. Lehmicke in his motion. No defendants have moved for summary judgment as to the state law claims.

2. The following facts are presented in the light most favorable to plaintiffs.

3. Plaintiffs describe CYS as an agency of Delaware County, Pennsylvania that administers laws and programs relating to protective services and adoptive placement for children, and maintains an office in Media, Pennsylvania.

4. The report issued by Dr. Brill is included as exhibit B to the complaint.

time." Plaintiffs' reply to Dr. Albert Lehmicke's motion for summary judgment ("Plaintiffs' opp."), exhibit C at 50. The last time Dr. Lehmicke saw Schreffler was on October 10, 1990.

Plaintiffs assert that after August 1990, defendants told them only that tests of the child produced normal results and that "everything was okay." They contend that they were never informed that an additional EEG was recommended by the electroencephalographer who performed the first EEG test, that the child suffered from neurologic abnormalities, or that the child's future neurodevelopmental prognosis was guarded.[5]

Plaintiffs accepted custody of Schreffler on September 27, 1990 with the intention of adopting him. On April 1, 1991, plaintiffs found Schreffler not breathing in his crib. The child was given CPR and rushed to the Fitzgerald Mercy Catholic Medical Center in Darby, Pennsylvania. The child was then transported by Sky Flight Care to Thomas Jefferson University Hospital in Philadelphia, where he was pronounced dead on April 2, 1991. A post-mortem examination done by the medical examiner was normal except for the existence of brain swelling. The cause of death listed in the autopsy report is Sudden Infant Death Syndrome ("SIDS"), commonly referred to as "crib death."[6] Plaintiffs were appointed administrators of Schreffler's estate in March 1992.

After Schreffler's death, plaintiffs claim that they requested and received his medical records which revealed to the plaintiffs for the first time that a second EEG test had been recommended, that neurological abnormalities existed, and that the child's prognosis concerning his future neurological development remained guarded. Plaintiffs assert that at no time prior to Schreffler's death did

CYS, Dr. Lehmicke, or any other agent or employee of CYS disclose to them the neurological information described above, notwithstanding numerous requests plaintiffs made for this information.

As to plaintiffs' constitutional claim, plaintiffs contend that in failing to provide them with an accurate picture of Schreffler's health prior to their taking the child home, defendants violated the First, Ninth, and Fourteenth Amendments of the United States Constitution. Specifically, plaintiffs claim that this alleged conduct interfered with Schreffler's liberty interest in life. Complaint at ¶ 49.

## II. DISCUSSION

### A. Constitutional Claim

■ The analysis of a summary judgment motion in federal court is set forth in Fed. R.Civ.P. 56. Rule 56(c) states that:

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510 (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2725, at 93–95 (1983)). In addition, a dis-

---

5. In response to a question asking Dr. Lehmicke when he told plaintiffs about the EEG and the child's guarded condition, Dr. Lehmicke stated, "I personally would have told them September 26th. Prior to that time, August 22nd, having reviewed that letter, I told the CYS nurse that the foster parents should be told of the contents of the examination and the report and that we will have to observe the child's neurological tone carefully." Plaintiffs' opp., exhibit C at 22. The evidence does not indicate whether Dr. Lehmicke ever told plaintiffs of the child's condition.

6. According to Dr. Lehmicke, SIDS describes a case where a "previously well" child dies, and an autopsy is performed, and no cause for that death is found.

Dr. Brill claims that the classification of Schreffler's death as SIDS is inaccurate as the child "was too old and he was neurologically impaired." Plaintiff's opp., exhibit A at 2. Regardless, he does not dispute that the child's death was "unexplained." *Id.*

pute over a material fact must be "genuine," *i.e.*, the evidence must be such "that a reasonable jury could return a verdict in favor of the non-moving party." *Id.*

Rule 56(e) does not allow the non-moving party to rely merely upon bare assertions, conclusory allegations or suspicions. *Fireman's Ins. Co. of Newark v. Du Fresne*, 676 F.2d 965, 969 (3d Cir.1982). In addition, the evidence of the non-moving party is to be considered as true, and justifiable inferences arising from the evidence are to be drawn in his or her favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. Yet if the evidence of the non-moving party is "merely colorable," or is "not significantly probative," summary judgment may be granted. *Id.* at 249–50, 106 S.Ct. at 2511. The non-moving party must offer specific facts contradicting the facts averred by the movant which indicate that there is a genuine issue for trial. *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990).

For plaintiffs to recover under Section 1983, they must prove (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that the conduct deprived plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1141–42 (3d Cir.1990) (citing *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981)); *Campbell v. City of Philadelphia, Department of Human Services*, 1990 WL 102945 at *2 (E.D.Pa. July 18, 1990). There is no dispute among the parties here that defendants were state actors during the relevant period. Defendants argue instead that their conduct did not deprive Schreffler of his rights secured by the Fourteenth Amendment.

■ Plaintiffs assert, as administrators of Schreffler's estate, that defendants' conduct violated the child's fundamental liberty inter-

est in life. In analyzing this claim, the elements that plaintiffs must satisfy can be divided, just as with an ordinary tort claim, into two separate parts. First, they must show that defendants owed Schreffler a duty of care. Second, plaintiffs must be able to demonstrate that defendants' actions or inactions failed to fulfill their duty of care and that this failure led to the deprivation of the child's constitutional rights. *Shaw by Strain*, 920 F.2d at 1144; *Holman v. School District of Philadelphia*, 1993 WL 197445 at *2 (E.D.Pa. May 28, 1993) (harm must be caused by constitutional violation and defendants must be responsible for it).

Defendants maintain, *inter alia*, that summary judgment should be granted because plaintiffs have failed to present evidence enabling a jury to find that defendants' acts or omissions proximately caused Schreffler's loss of life.[7] Defendants argue that plaintiffs have failed to establish a causal connection between Schreffler's death and: 1) Dr. Lehmicke's failure to take follow-up measures such as renal tubular acidosis, a repeat EEG, gastroesophageal reflux, or continued observation of the child's neurological condition, or 2) Dr. Lehmicke's failure to inform plaintiffs of pertinent medical information.

In support of their motion for summary judgment, defendants offer the opinion of Dr. Glenn B. Mannheim, who reviewed various medical records relating to Schreffler. In response, plaintiffs proffer two reports by the child's neurologist, Dr. Brill, and the deposition testimony of Dr. Lehmicke. Examining the record in the light most favorable to plaintiffs, as I must do, I conclude that the evidence does not demonstrate that a reasonable jury could find that defendants' actions caused Schreffler's death.

Dr. Mannheim, an expert commissioned by plaintiffs' counsel, admitted in his report of June 14, 1993, that he is uncertain about the cause of Schreffler's death. In response to

---

**7.** In defendants' motion, they focus on the issue of proximate cause. Defendants' failure to attack the remaining elements of plaintiffs' cause of action may be due to their misunderstanding of my May 3, 1993 Order. Defendants incorrectly interpret that Order as finding that defendants owed Schreffler a duty of care, *i.e.*, that a "special relationship" existed. Motion at 3–4. That

Order only determined that under the relaxed standards of Fed.R.Civ.P. 12(b)(1), it was not "implausible" that the elements of a section 1983 claim were met. However, as I find that the issue of proximate cause is dispositive, I need not address whether defendants owed Schreffler a duty of care.

**136**

plaintiffs' question as to whether " 'the child's neurological problems were a possible contributing factor in his death and/or that the neurological problems could have increased his risk of harm/illness/death?' ", Dr. Mannheim candidly replied,

> The answer is possibly. Children with neurological abnormalities are more prone to sudden deaths.... Given that no abnormalities were detectable on the postmortem, and given that there was no apparent follow-up on the question of renal tubular acidosis, repeat EEG, or gastroesophageal reflux, it would only be *conjecture* to suppose that any of these mechanisms were responsible for his death, or, that *should they have been detected* his death could have been prevented.

Motion, exhibit B at 4 (emphasis added).

In rebuttal, plaintiffs present Dr. Brill's "Memo," dated March 11, 1992, from a conference concerning the child. After describing the circumstances surrounding Schreffler's death, Dr. Brill concluded:

> I think the chance of picking up seizure activity on another EEG would have been very slim.... In view of the fact that I believe the EEG would have been normal I do not think that the fact that not having done one increased this child's risk of unexplained death.... Even if it couldn't be determined that not doing the EEG increased the risk, I do not think, however, *with reasonable or medical certainty, that not having done this study led to or contributed to his death.*

8. Plaintiffs query whether monitoring could have prevented the child's death, whether the child's neurological problems caused his death, why Dr. Brill was consulted at the hospital, etc.

9. Through a few brief passing references, plaintiffs appear to argue that they can establish the "causation" prong of section 1983 by showing that Dr. Lehmicke's conduct increased the child's risk of harm and/or death. Plaintiffs neither cite to authority to support their position nor do they even brief the issue. *See* plaintiffs' opp., ¶¶ 6, 7.

Although I express doubt as to the propriety of plaintiffs' claim of "increased risk," it is unnecessary for me to reach this issue as plaintiffs' merely raising the theory obliquely in their memorandum falls woefully short of presenting ade-

Plaintiffs' motion, exhibit A at 2 (emphasis added). Dr. Brill also noted in a memo dated June 14, 1991, that "it is possible that the child had seizures and that an unwitnessed seizure led to a cardiac arrhythmia which caused the child's death. *This is entirely speculative on my part but is not impossible.*" Plaintiffs' motion, exhibit B at 2 (emphasis added). Dr. Brill's statements simply fail to evince any concrete evidence that defendants' acts or omissions caused the child's death.

Plaintiffs also offer the deposition testimony of Dr. Lehmicke taken on June 3, 1993. However, his testimony adds little to the examination of proximate cause. Dr. Lehmicke states that in his opinion, the child's death was not due to the neurological problems, explaining that,

> In a child with a normal EEG, a normal CAT scan, a course consistent with this child's course, and an autopsy showing no other reason for death, the diagnosis is sudden infant death syndrome, which is not related to the type of neurological problem that this child had.

Plaintiffs' opp., exhibit C at 54.

Plaintiff has simply failed to offer evidence that would enable a jury to find that the defendants' conduct *caused* Schreffler to suffer a violation of his fundamental "liberty interest in life." Plaintiffs' opp. at 2. Plaintiffs suggest many unanswered questions in their reply to defendants' motion.[8] But plaintiffs have failed to present evidence that establishes, with any degree of certainty, that defendants' acts or omissions deprived the child of his constitutional rights.[9]

quate proof, let alone legal authority. *See Smetanka v. Borough of Ambridge, Pennsylvania*, 378 F.Supp. 1366, 1379 (W.D.Pa.1974) (Under 42 U.S.C. § 1983, the plaintiff had the burden of proving a causal connection between defendants' conduct and their injury. "This burden was not discharged by showing that [borough] council had a dual reason for their discharge, or even by raising a strong inference that their dismissals were in part politically motivated, but required proof that *but for* their political associations and activities they would not have been discharged, i.e., that they were fired solely for political reasons. On this record such a finding would be sheer speculation on the part of the court." (emphasis added)); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989) (To make out a claim

As I have previously noted, "[t]o establish a genuine issue of fact that defeats a motion for summary judgment, [a plaintiff] must 'do more than simply show that there is some *metaphysical doubt* as to the material facts,' " she must come forward with "specific facts showing that there is a genuine issue for trial." *Blanding v. Pennsylvania State Police*, 811 F.Supp. 1084, 1096 (E.D.Pa.1992) (quoting in part *Matsushita Electric Industry Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)) (emphasis added). Here, even if plaintiffs establish all of which they have shown they are capable, a jury would still be left to speculate—more probably to guess— as to the cause of Schreffler's death. I cannot permit such a case to go to a jury, and considering my responsibility under Fed. R.Evid. 403, the evidence proffered would lead to speculation and confusion by the jury. To survive a motion for summary judgment, plaintiffs must present more than mere allegations, bare assertions or simple *suspicions.* Because they have not done so, I find summary judgment must be granted as to plaintiffs' remaining federal claim alleging a violation of Schreffler's rights under 42 U.S.C. § 1983.[10] *See Richardson v. City of Philadelphia,* 1992 WL 46899 at *4, 1992 LEXIS 3345 at *7 (E.D.Pa. March 6, 1992), *aff'd,* 977 F.2d 569 (3d Cir.1992).

### B. *State-law Claims*

Having dismissed plaintiffs' federal claim, I will decline to exercise my discretion to retain this Court's supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367[11], and, thus, will dismiss those claims without prejudice.[12]

### III. CONCLUSION

For the foregoing reasons, the motion of defendant Dr. Albert Lehmicke, in which Helen Francis, Kathy Hume, H. Scott Campbell, and Children and Youth Services of Delaware County have joined, for partial summary judgment pursuant to Fed.R.Civ.P. 56 shall be granted. Plaintiffs' state law claims shall be dismissed without prejudice.

An appropriate order follows.

### *ORDER*

AND NOW, this 27th day of September 1993, upon consideration of the motion of the defendant Dr. Albert Lehmicke, joined by all

---

under 42 U.S.C. § 1983, plaintiff must show that defendants conduct "actually causes injury"); *Cochenour v. Cochenour,* 888 F.2d 1244, 1246 (8th Cir.1989) (causation element not satisfied where court determined the real "legal cause" of the injury); *Morton v. Becker,* 793 F.2d 185, 187, 189 (8th Cir.1986) (fact that complaint does not show that defendant's conduct is the cause of plaintiff's injury is an "insuperable barrier" to recovery under section 1983); *Black v. Stephens,* 662 F.2d 181, 189–190 (3d Cir.1981), *cert. denied,* 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876, *reh'g denied,* 456 U.S. 950, 102 S.Ct. 2022, 72 L.Ed.2d 475 (1982) (causal nexus is necessary under section 1983); *Pao v. Holy Redeemer Hospital,* 547 F.Supp. 484, 491 (E.D.Pa.1982) (to establish a claim under section 1983, a plaintiff must establish that a defendant's conduct *caused* an injury to a plaintiff's constitutional rights); *Popow v. Margate,* 476 F.Supp. 1237, 1240 (D.N.J.1979).

Moreover, even if I were to accept plaintiffs' increased risk theory of causation, the evidence plaintiffs have proffered is too speculative to permit a reasonable trier of fact to find Dr. Lehmicke's conduct actionable under section 1983. In addition, I find that the expert opinions offered by plaintiffs are so speculative so as not to be of assistance to a jury and, therefore, would be inadmissible at trial. *See* Fed.R.Evid. 702.

10. As I have granted summary judgment as to plaintiffs' claim under 42 U.S.C. § 1983, I will also grant summary judgment as to plaintiffs' demand for attorney's fees under 42 U.S.C. § 1988, as plaintiffs are not "prevailing parties" as required by section 1988.

11. 28 U.S.C. § 1367(c)(3) states "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if. . . . (3) the district court has dismissed all claims over which it has original jurisdiction."

12. 28 U.S.C. § 1367(d) provides that the period of limitations for claims such as plaintiff's which are dismissed by the United States district court under that statute shall be tolled while the claim is pending in the district court, and for thirty days after dismissal, unless state law provides for a longer tolling period.

In addition, Pennsylvania law, 42 Pa.Cons. Stat.Ann. § 5103, provides that matters dismissed by a federal court for lack of jurisdiction may be refiled in the state courts without regard to the limitations period. *See Fulkerson v. City of Lancaster,* 801 F.Supp. 1476, 1486 (E.D.Pa. 1992), *aff'd,* 993 F.2d 876 (3d Cir.1993).

138

other defendants, for partial summary judgment pursuant to Fed.R.Civ.P. 56 (Document No. 14), the response of the plaintiffs thereto, and the reply of the defendants, and for the reasons stated in the attached memorandum, it is hereby **ORDERED** that the motion is **GRANTED. JUDGMENT IS HEREBY ENTERED** in favor of defendants and against plaintiffs to the extent plaintiffs assert a claim for the deprivation of Schreffler's constitutional rights in Counts One and Two of their complaint.

**IT IS FURTHER ORDERED** that plaintiffs' state law claims are hereby **DISMISSED** without prejudice. This **ORDER** constitutes a final judgment on all claims.